THE STATE, THE ATLANTIC CITY WATER WORKS COMPANY, PROSECUTOR, v. THE CONSUMERS WATER COMPANY AND ATLANTIC CITY.

"An act for the construction, maintenance and operation of water works for the purpose of supplying cities, towns and villages of this state with water," approved April 21st, 1876 (*Rev. Sup.*, *p.* 650), authorizes the formation of more than one company in a city, town or village for the purposes designated.

On *certiorari* to review an ordinance of the common council of Atlantic City.

Argued at February Term, 1889, before Justices SCUDDER, DIXON and REED.

For the prosecutor, *S. H. Grey* and *Theodore Runyon.*

For the defendants, *W. E. Potter* and *Attorney General Stockton.*

The opinion of the court was delivered by

DIXON, J. This *certiorari* brings up an ordinance of Atlantic City, approved March 5th, 1888, granting to The Consumers Water Company the privilege of laying water pipes in the streets of the city.

The prosecutor denies the validity of this ordinance for the following reasons :

*First.* Because the city council of Atlantic City having authority under the charter of said city to provide a supply of water for the use of said city and the inhabitants thereof, was, by said charter, charged with the duty of providing such supply, and, in the discharge of said duty and in the exercise of said authority, gave its consent, in writing, to the formation of the "Atlantic City Water Works Company," prosecutor in *certiorari,* in accordance with the provisions of an act entitled "An act for the construction, maintenance and opera-

tion of water works for the purpose of supplying cities, towns and villages of this state with water," approved April 21st, 1876, in and by an ordinance entitled "An ordinance to provide a supply of water for Atlantic City," approved October 21st, 1880 ; and said Atlantic City Water Works Company having been duly organized as a corporation under the provisions of said act of the legislature, and pursuant to said consent of said Atlantic City, became and was and is a corporation with the *exclusive power to supply water* to said Atlantic City and the inhabitants thereof, and the *exclusive franchise of furnishing such supply.*

*Second.* Because said The Atlantic City Water Works Company, pursuant to the statute last above referred to, furnished a supply of pure and wholesome water to said Atlantic City and the inhabitants thereof on the 19th day of June, 1882, and has always since supplied to said city and the inhabitants thereof an abundance of pure and wholesome water, and having been so organized for the purpose, under the authority and with the consent aforesaid, and having furnished water as aforesaid, said Atlantic City Water Works Company became and was and is, by virtue of the act of the legislature aforesaid, entitled to the *exclusive right and privilege* to provide a supply of pure and wholesome water to Atlantic City and the inhabitants thereof, and to use the streets of said city for its water pipes and conduits to distribute such supply, and *Atlantic City and the city council* thereof were on the 5th day of March, 1888, and at all times since the 21st day of October, 1880, have been and now *are without authority to consent to the formation of any other company* to provide a supply of water to said city or its inhabitants.

The question thus presented is, whether it was the design of the said statute of April 21st, 1876 (*Rev. Sup., p.* 650), to confer upon the corporation first organized under it in any city, town or village, the exclusive franchise of supplying water to the inhabitants thereof.

The legal rule of construction applicable to such an inquiry seems to be definitely settled. It is, that, the grant being a

public one, nothing can be claimed by virtue of it which is not clearly given, and where an exclusive privilege is not granted by express words or necessary intendment, none can be presumed to exist.    *Charles River Bridge* v. *Warren Bridge*, 11 *Pet.* 420; *Mohawk Bridge Co.* v. *Utica and Schenectady Bridge Co.*, 6 *Paige* 554; *Bridge Co.* v. *Hoboken Land and Improvement Co.*, 2 *Beas.* 81; *Delaware and Raritan Canal Co.* v. *Raritan and Delaware Bay R. R. Co.*, 1 *C. E. Gr. 321*. This rule is, of course, entirely distinct from the proposition that the grant of a franchise to a particular person entitles him to exclude from exercising the franchise every other person to whom a like grant has not been made.    That proposition is not here pertinent, for the grant now in question was not tendered to any particular persons; it was offered to all persons generally; and the contention relates merely to the scope and character of the franchise itself.    Was it the *sole* right to become a corporation for the purpose of supplying the designated municipality with water, or was it simply a right to do so, the same right remaining available for other persons as well?    On such an inquiry the rule above stated must guide us.

The discussion before us was somewhat indefinite, but I understand the prosecutor to rest its claim of an exclusive franchise on three grounds: *First*, the *words* of the act, in providing "that any number of persons, not less than seven, * * * may form *a company* for the purpose of constructing, maintaining and operating water works in any city, town or village, * * * and for the purpose of supplying such city, town or village and the inhabitants thereof with water;" *second*, the fact that the consent of the municipal authorities is by the statute made necessary for the creation of the company; *third*, the purposes and powers of the corporation, as being in their nature and design exclusive.

The first reason, because the act speaks of the formation of *a company*, and not of *companies*, in any city, town or village, has no substance.  Similar language is used in our General Corporation act, General Railroad law and General Canal law,

but it has never been suggested or supposed that they conferred exclusive franchises. Under the railroad and canal laws, also, the locality, in which each company is to operate, must be as precisely defined as under the statute which we are now considering.

Nor has the second ground any firmer support. It is as reasonable to assume that the local authorities were invested with the right of giving or withholding consent, in order that they might act upon an attempt to form a second or third company, as to suppose that such right had reference to the first company only. The public interests of the municipality might be involved in the later applications as greatly as in the earliest one.

The third reason is of more solidity.

The statute is limited to cities, towns and villages having a population not exceeding fifteen thousand. It authorizes a company organized under it for any municipality to furnish to the municipality and its inhabitants a supply of water, and therefore, of course, imposes on such company the duty of doing so. To this end, it gives to the company the power of eminent domain over all lands, springs and streams of water necessary for its purposes. Consequently, if the first company formed did its duty equitably and intelligently, there would be no lack of water as good as the neighborhood would afford. Not without some force, therefore, does the prosecutor urge that in each of these smaller municipalities the legislative purpose can and will be accomplished by a single corporation ; that two or more such companies could not maintain an existence, and that the legislature did not intend to delegate this broad power of eminent domain to more instrumentalities than were necessary for the public good.

But, notwithstanding these considerations, I am not satisfied that the franchise is exclusive. While theoretically one company may be sufficient for public accommodation, practically it may fall short of that result. The municipal authorities are not clothed with power to dictate to the company the sources whence water shall be obtained, the places into which

it shall be carried, or the rates at which it shall be sold. The determination of these matters is committed chiefly to the company itself. A negative may indeed on some points be interposed by the local authorities, and there exists the right of supervision by the courts. But it is indisputable that an important, and, perhaps, the most potent, incentive to the corporation to use its franchises properly, would be the fear of a possible competitor. It is at least doubtful whether the legislature meant to weaken the cogency of this motive, by enacting a law under which no competitor could come into being. Had such a purpose been entertained, it could so easily have been expressed in unmistakable terms, that it would not have been left to uncertain inference. Under the guidance of the rule of construction above stated, its existence should therefore be denied.

The reasons assigned by the prosecutor do not warrant the interference of the court, and the writ of *certiorari* should be dismissed, with costs.