BROWSE T. PRENTIS AND RACHEL L. DOTY v. GEORGE W. BATES ET AL.

[See 88 Mich. 567.]

*Will—Mental competency—Burden of proof—Evidence—Statements of counsel—Witnesses.*

1. The burden of proof upon the question of mental capacity rests with the proponents of a will throughout the case; citing *Aikin v. Weckerly*, 19 Mich. 482; *McGinnis v. Kempsey*, 27 Id. 363.

2. Counsel have the right, in their opening to the jury, before the introduction of testimony, to state in good faith their claims as to the law, in so far as it is necessary to give the jury an understanding of their theory of the case; citing *Fosdick v. Van Arsdale*, 74 Mich. 302.

3. Nothing short of bad faith or a gross misconception of what is admissible, resulting in bringing to the attention of the jury matters wholly irrelevant, and of a nature·calculated to create so profound an impression that the charge of the court cannot eliminate the prejudice produced, will justify an appellate court in vacating a judgment on the ground of improper opening, either in statement of the law or fact.

4. Testimony that a testatrix was erratic, eccentric, rambling and disconnected in her conversation, flighty in her notions, unsettled; that her temper was excitable; that she could not comprehend connected conversation; that she ran about the house, screaming, with her dress open in the front, etc.,—is competent to be considered by the jury, with the other evidence offered in the case, for the purpose of showing testamentary incapacity.

5. If it be the rule, as this Court has repeatedly held, that inferences from proven facts are to be drawn by the jury, and not by the court, it follows that in making proof of mental incompetency any fact which is more consistent with that theory than with that of mental soundness must be admissible, and the duty of drawing an inference therefrom is one which an appellate court should not undertake, but which rests with the jury; citing *Perrott v. Shearer*, 17 Mich. 48; *Blackwood v. Brown*, 32 Id. 104; *Hayes v. Homer*, 36 Id. 374; *Wessels v. Beeman*, 87 Id. 481.

6. Testimony that a sister of a testatrix became insane, and that her niece, at the age of 34, was sent to an asylum for treatment, is admissible as tending to show an hereditary taint of insanity in the testatrix, and its weight is for the jury; citing *People v. Garbutt*, 17 Mich. 9.

7. It is contended on behalf of the contestants that the jury are to be made the judges in all cases of whether the acquaintance of the witnesses with the party whose sanity is in question was such as to entitle their opinion to weight. In any case where they have shown sufficient acquaintance with the party as to render their opinion of any value whatever, this is undoubtedly true, and it can be said on behalf of such a .rule as is contended for that it is one more easy of application to particular cases than that which the Court believe to be the more correct rule, which is that in any given case the . trial judge should, as a preliminary question, determine whether there is any basis

shown by the testimony of the witness for an opinion; citing *White v. Bailey*, 10 Mich. 163; *Beaubien v. Cicotte*, 12 Id. 502.

8. This ruling, of necessity, implies that, before a witness is permitted to express an opinion, he must testify to something in the appearance of the party which is sufficient at least to justify the inference of incompetency. It may be a question of some difficulty to determine in all cases whether a witness has shown himself competent, nor is it intimated that he may not be able to state to the jury his opinion, after showing that there were acts and appearances of the party which he is unable to describe to the jury, but which left an impression upon his mind; but, in the absence of this, and where the testimony of the witness only goes the length of showing acts which are entirely consistent with sanity, and which have not the slightest tendency to show insanity, it would be a dangerous rule which would permit his opinion to be received.

Rehearing, upon application of contestants, of case reported in 88 Mich. 567. Argued June 30, 1892. Order of reversal modified October 4, 1892.

*George H. Prentis (Alfred Russell,* of counsel), for proponents and appellants.

*Griffin & Warner (Otto Kirchner,* of counsel), for contestants.

MONTGOMERY, J. A rehearing was ordered in this case after full consideration, the members of the Court who took part in the former decision being convinced that the questions involved deserve re-examination. This rehearing has been had, and we feel constrained to depart from some of the conclusions stated in the former opinion, which, while having the support of respectable authority, we find to be in conflict with some of the former rulings of this Court, which for the time escaped attention. For convenience we will consider the questions involved in the same order adopted in the former opinion.

1. The first question considered was whether counsel for the contestants abused his privilege in his opening state-

ment to the jury. On the former hearing the sitting members of the Court were impressed with the view that the trial judge had not sufficiently restricted contestants' counsel in this case, but a fuller argument and examination have convinced us that the statements of counsel, both as to the propositions of law contended for in his opening, and as to the facts which he expected to prove, were made in the utmost good faith. The will offered for probate was made in favor of the relations of decedent's husband, to the exclusion of her own nieces and nephews, and counsel for contestants referred to this fact, and claimed that it was an unnatural will, and that in such cases the law will draw an inference that the will was procured by fraud; and also argued, in the same connection, that the burden of proof in such cases would rest upon the proponents. The question of undue influence was afterwards eliminated from the case by the trial judge. It is unnecessary to determine whether the contestants' position on the law of the case was wholly sound or not, as counsel had the right, under the rulings of the Court, to state in good faith his claims as to the law, in so far as it was necessary to give the jury an understanding of his theory. As was said in *Fosdick v. Van Arsdale*, 74 Mich. at page 305:

"Counsel have the right, both in opening the case to the jury, before the testimony to support their case is offered, and when closing the argument, after the testimony is in, to state to the jury that they claim the law to be thus and so."

This ruling, it is believed, is in accord with the general understanding of the profession, and certainly is no departure from the practice which has obtained at the circuit from the time of the adoption of the present rules of court. This right would be nothing more than a mere shadow, or, worse, a dangerous snare, if, after counsel has

taken his position in good faith, he is to be made the
guarantor of his views of the law on every question pre-
sented, and, if in the end it should be found that he is
mistaken on some point of minor importance, the judg-
ment in his favor is to be vacated for this reason.  It
must be an exceedingly plain case of an abuse of privilege
which will justify the setting aside of the verdict on the
ground of improper opening either in statement of the law
or fact.  Nothing short of bad faith or a gross misconcep-
tion of what is admissible, resulting in bringing to the
attention of the jury matters wholly irrelevant, and of a
nature calculated to create so profound an impression that
the charge of the court cannot eliminate the prejudice pro-
duced, will justify an appellate court in vacating a judg-
ment on such grounds; and, in determining whether such
an error has been committed, it is believed to be entirely
safe to credit the jury with at least average intelligence.
*People v. Gosch*, 82 Mich. 22; *Porter v. Throop*, 47 Id.
313; *Campbell v. Kalamazoo*, 80 Id. 655.  Tested by this
rule, we do not think any error was committed by counsel
in his opening, either in stating the law or facts which he
expected to prove.  The statement of the facts expected
to be proved by Dr. Gallagher, quoted in the former
opinion, was termed "extravagant."  A careful examina-
tion of the testimony actually introduced convinces us that
the contestants made the proposition in good faith, and,
although the proof of what was said was not as full as the
opening statement, yet the substance of what was stated,
namely, that Mrs. King mistook pills for flies, and mis-
took a fly for the pill, was testified to by the witness.

2. In the former opinion certain testimony was criticised
as not in itself tending to show want of testamentary
capacity.  While this is true of the testimony quoted, yet
a more full argument and citation of authorities convinces
us that it was competent to show by witnesses that decedent

was erratic, eccentric, rambling and disconnected in her conversation, flighty in her notions, unsettled; that her manner was excitable; that she could not comprehend connected conversation; that she ran about the house, screaming, with her dress open in the front, etc. These circumstances, of themselves, might not have been sufficient to show testamentary incapacity, but they were competent to be considered with the other evidences offered in the case for that purpose. It cannot be contended in this case that there was not enough testimony to justify submitting to the jury the question of mental incapacity, and, where this is the case, circumstances are often admissible which may co-exist with a perfectly sound mind. It seldom occurs that any one circumstance or act of a party will, of itself, show insanity. On the contrary, the judgment of his acquaintances, as well as of medical experts, must be and is made up from circumstances and acts trivial in themselves, but which, when considered together, carry conviction of mental unsoundness. Reference is made to the case of *Fraser v. Jennison*, 42 Mich. 206, and language may be found in the opinion of the Court in that case which apparently gives some support to the contention of proponents. But we think this Court has never evinced the purpose of creating one rule of evidence which shall apply in will cases, but which is not to be adopted in any other. It is much better than that any such incongruity should become ingrafted in our law that it be left to the trial judge to guard carefully the rights of legatees by full and adequate instructions upon the degree of mental competency requisite to make a valid will, accompanied by any necessary caution against giving undue weight to circumstances which, while more consistent with insanity than sanity, yet may co-exist with either condition of mind. If it be the rule, as this Court has repeatedly held, that inferences from proven facts are to be drawn by the jury,

and not by the court, it follows that in making proof of mental incompetency any fact which is more consistent with that theory than with the theory of mental soundness must be admissible, and the duty of drawing an inference therefrom is one which an appellate court should not undertake, but which rests with the jury impaneled in the trial court.    As was said in *Perrott v. Shearer*, 17 Mich. 54:

" When evidence is submitted to a jury, as bearing upon a certain point, it is for them and not for the court to determine whether it tends to establish that point or not. Whether it does so, in their opinion, may depend, not alone upon that particular item of evidence, but upon that evidence considered in its relation to other evidence."

In *Wessels v. Beeman*, 87 Mich. 489, it was said:

" We have frequently held that the tendency of the testimony to prove a certain fact is exclusively for the jury, and it is error for the circuit judge to add the weight of his opinion as to what it tends to prove, when there is a dispute in the testimony upon a point."

In *Blackwood v. Brown*, 32 Mich. at page 107, it was said:

" What certain statements tend to prove, or the weight to be given them, are proper questions for the jury, and the court cannot instruct them as to the weight or importance to attach to any particular part of the testimony. To do so would be but usurping the proper province of the jury."    See, also, *Hayes v. Homer*, 36 Mich. 374.

As was stated in the former opinion, several witnesses were permitted to express an opinion as to the mental capacity of Mrs. King to make the will in question.    It was strenuously insisted upon the argument for a rehearing that the witnesses in question showed their competency to speak upon the question, and that the weight to be given to their testimony was for the jury.    The language of the Court in the former opinion upon this subject was too broad in excluding the testimony of the witnesses

Austin, Hanley, French, and Weitz. Their testimony, as has been stated, was competent to be judged by the jury, and, upon fuller consideration, we are not inclined to hold that, as matter of law, it was not competent to take their opinion, although their opportunities for judging as to her capacity were certainly not such as to entitle their testimony to any great weight. But we are all of the opinion that the testimony of the witness John Scott did not show that he had such an opportunity of judging of Mrs. King's mental capacity as entitled his opinion to be received as evidence.

It is contended on behalf of the contestants that the jury are to be made the judges in all cases of whether the acquaintance of the witnesses with the party whose sanity is in question was such as to entitle their opinion to weight. In any case where they have shown sufficient acquaintance with the party as to render their opinion of any value whatever, this is undoubtedly true, and it can be said on behalf of such a rule as is contended for that it is one more easy of application to particular cases than that which we believe to be the more correct rule; which is that in any given case the trial judge should, as a preliminary question, determine whether there is any basis shown by the testimony of the witness for an opinion. In *Beaubien v. Cicotte*, 12 Mich. at pages 502, 503, it was said:

"The general doctrine is that all witnesses speaking from observation must, as far as possible, state such facts as they can give as the basis of their opinion. This rule does not require them to describe what is not susceptible of description, nor to narrate facts enough to enable a jury to form an opinion from those alone. This would be impossible; and, if it could be done, there would be no occasion for any opinion from the witnesses. * * * But, if witnesses were not compellable to state such facts as are tangible, there would be no means of testing their truthfulness. When they state visible and intelligible

93 MICH.—16.

appearances and acts, others who had the same means of observation may contradict them, or show significant and explanatory facts in addition; and if their story is fabricated, or if they describe facts having a medical explanation, medical experts may detect falsehood in inconsistent symptoms, or determine how far the symptoms truly given have a scientific bearing. *But, from the nature of things, no rule can be laid down declaring what amount of acquaintance or what opportunities are necessary to enable an observer to be a witness.* There are cases of insanity open to the slightest scrutiny, while others defy the keenest search. But no testimony can be of any real value unless it appears the witness had adequate means and opportunities for forming some conclusion."

In *White v. Bailey,* 10 Mich. at page 163, Mr. Justice . CAMPBELL said:

" Until the facts were shown, it could not be determined whether the witness was competent to form any opinion whatever, or whether there was room for any inferences not within the unaided good sense of the jury. Had the witness been fully examined concerning his means of observation, and also concerning the facts he actually observed, it is possible that the question put, although somewhat too broad in form, might not have been legally objectionable; and it does not seem to have been objected to on this account. But, standing alone, it was certainly immaterial what opinion any person had formed upon the condition of the deceased, because there was no legal basis shown on which it could be rested."

This ruling, of necessity, implies that, before the witness is permitted to express an opinion, he must testify to something in the appearance of the party which is sufficient at least to justify the inference of incompetency. It may be a question of some difficulty to determine in all cases whether a witness has shown himself competent, nor do we intimate that he may not be able to state to the jury his opinion, after showing that there were acts and appearances of the party which he is unable to describe to the jury, but which left an impression upon his mind; but in

the absence of this, and where the testimony of the witness only goes the length of showing acts which are entirely consistent with sanity, and which have not the slightest tendency to show insanity, it would be a dangerous rule which would permit his opinion to be received.

3. It was stated in the former opinion that the testimony relating to the insanity of Mrs. Kings' sister and niece ought not to have been received. Upon fuller argument, and a careful examination of the former rulings of this Court, we are satisfied that the case of *People v. Garbutt, infra,* has settled this question, and therefore hold that this testimony was admissible as tending to show an hereditary taint of insanity in deceased, and that its weight was for the jury. *People v. Garbutt,* 17 Mich. 9. See, also, *State v. Simms,* 68 Mo. 305; *Baxter v. Abbott,* 7 Gray, 71.

4. We adhere to the view expressed in the former opinion that the question to Dr. Draper was incompetent. This question was:

" Assuming that Exhibit B, hereto annexed, is a true record as far as it goes, what, in your opinion, must have been the condition of Abigail Williams, the patient, from the time of her admission to her death?"

The record, which is set out in the former opinion (88 Mich. 584), speaks for itself. If inferences are to be drawn from it, they are to be drawn by the jury. The witness, in answer to the question, testified to certain conclusions based upon the assumed fact that the existence of any pronounced delusions or paroxysms of excitement would have been noted in the record. It was specially objected that the proper foundation had not been laid for this question. This objection was well taken. It did not appear that the witness had any knowledge of the methods employed of keeping these records at the time Abigail Williams was an inmate of the asylum.

5. As the case must go back for a new trial, it is hardly

necessary to consider at any great length the competency of the hypothetical questions referred to in the former opinion. It is quite evident, however, that the witness had in mind, in giving his answer to the second question, elements which were embodied in the first. We are satisfied that the criticisms made of these questions in the former opinion were somewhat too stringent, and that it is unsafe to lay down any rule which excludes any portion of the actual history of the case of which evidence has been given as incompetent, for the reason that these evidences, by themselves, have no tendency to support the claim of insanity. A cross-examination, by sifting out such facts, will elicit the true grounds of the expert's belief, and enable the jury to judge of the reasonableness of the conclusions. It also follows from this view that it was competent to call the attention of the witness to such acts as were claimed by the proponents to show sanity, and to take the opinion of the witness as to whether the existence of these facts, together with those claimed to have been proven by the contestants, was inconsistent with the claim of insanity of the testatrix.

6. It appears by an examination of the record that the Mix letters, offered in evidence, and which were excluded, were not written by the witness under examination. The ruling of the circuit judge excluding them was therefore correct.

7. We still adhere to the view that the cross-examination of Mrs. Mix was too much restricted, and that the questions put to her should have been permitted. As was said in the former opinion, the testimony of this witness was such as to justify a very broad latitude of cross-examination, and the question, namely, whether a banquet was given by a club to which her son belonged, and at which her husband made a speech, and whether Mrs. King attended the banquet, was certainly entirely proper. It was an

important fact, if true, that Mrs. King was able to attend and participate in the banquet.

8. In the former opinion it was stated that the burden of proof was upon the contestants both upon the question of mental capacity and undue influence. This is undoubtedly true as to the latter. This statement was not essential to the determination of the case, and was not made upon the full examination of the subject that would doubtless have been given it had it been deemed important to the decision of the case. Undoubtedly, the statement is supported by many authorities, but it is not in accordance with the rule in this State, and, in order that the profession may not be misled by this statement, we take the earliest occasion to correct it. It was held in *Aikin v. Weckerly*, 19 Mich. 482, upon a review of the earlier authorities of this State, that the burden of proof upon the question of mental capacity rested with the proponent throughout the case. This rule was followed in *McGinnis v. Kempsey*, 27 Mich. 363, 373, and has become so firmly established as the law of this State that we do not feel justified in overthrowing it. See, also, *Beaubien v. Cicotte*, 8 Mich. 9; *Taff v. Hosmer*, 14 Id. 309.

The order reversing the judgment should stand, but it will be modified in so far as it relates to the costs of the court below. Judgment will be entered reversing the judgment below, with costs of this Court, the costs of the court below to abide the event of a new trial. No costs will be awarded to either party on this rehearing.

McGRATH and LONG, JJ., concurred with MONTGOMERY, J.

MORSE, C. J. I concur in the main with the opinion of Mr. Justice MONTGOMERY, but I do not think the evidence of the insanity of Octavia Bates was admissible.

GRANT, J. (*dissenting*). I think the former unanimous opinion of the Court in this cause was correct. I should

consider any further statement of the principles there enunciated unnecessary, were it not for the earnestness of the able and distinguished counsel for the contestants in their arguments upon the rehearing.

1. The decision as to the burden of proof was based upon the general doctrine that all persons are presumed to be sane, and to possess sufficient mental capacity to execute all documents in the various transactions of human affairs. Sales and transfers of property are made, and the business of the world is carried on, upon this presumption. The rule is that he who asserts incapacity in any of these transactions assumes the burden of proof. Sanity is the normal condition of mankind. Does this presumption hold in the case of wills, and does the burden of proof belong to him who asserts the contrary? Even in criminal cases, the law presumes the prisoner to be sane, and the people are not required to give any proof of sanity until the person charged with crime has given evidence of insanity. In the case of a deed, the burden of proof, under all the authorities, is upon him who asserts want of capacity in a grantor. A less mental capacity is required to make a will than to make a deed. Now, if the distinguished counsel for contestants are correct, then if a person executes a deed and a will on the same day, the presumption of capacity and of sanity accompanies the deed, and the burden of proof is upon him who assails it; while in the case of the will the presumption of incapacity prevails, and the burden of proof of capacity is with the proponents of the will. Therefore, where the least capacity is required, the presumption of incapacity must prevail. If Mrs. King had given her property to these same devisees by deed, the burden of proof would rest upon those who assail it; but, having given it by will, the burden rests upon proponents. Such a distinction is not founded upon reason or good sense. The following authorities hold to the presumption of sanity

and capacity of a testator, and that the burden of proof is with those who contest: *McCulloch v. Campbell*, 49 Ark. 367 (5 S. W. Rep. 590); *Saxon v. Whitaker's Executor*, 30 Ala. 237; *Pettes v. Bingham*, 10 N. H. 514; *Perkins v. Perkins*, 39 Id. 163; *Rush v. Megee*, 36 Ind. 69; *Turner v. Cook*, Id. 129; *Chandler v. Barrett*, 21 La. Ann. 58; *Mullins v. Cottrell*, 41 Miss. 316; *Fee v. Taylor*, 83 Ky. 259; *Harris v. Hays*, 53 Mo. 96; *Taylor v. Creswell*, 45 Md. 430; *Elkinton v. Brick*, 15 Atl. Rep. 393; *McCoon v. Allen*, 17 Id. 824; *Trumbull v. Gibbons*, 22 N. J. Law, 155; *Boylan v. Meeker*, 28 Id 274; *Blake v. Rourke*, 74 Iowa, 519 (38 N. W. Rep. 394); *Stephenson v. Stephenson*, 62 Iowa, 163 (17 N. W. Rep. 456); *Grubbs v. McDonald*, 91 Penn. St. 236; *Egbert v. Egbert*, 78 Id. 326; *Thompson v. Kyner*, 65 Id. 368; *Carpenter v. Calvert*, 83 Ill. 62; *Wilbur v. Wilbur*, 129 Id. 392; *Allen v. Griffin*, 69 Wis. 537; *Barnes v. Barnes*, 66 Me. 300.    In *Barnes v. Barnes* it is said:

"It would seem that in the case of a will the party alleging insanity should offer evidence tending to show that fact before the proponent should be called upon to negative its existence."

In 1 Redf. Wills, p. 32, § 4, it is said:

"It must be admitted, we think, upon careful examination of all the cases, that the burden of proof of insanity in the case of a will, equally with that of a deed or other contract, is upon the party alleging it, and who claims the benefit of the fact when established."

But it is insisted that the decisions of this Court are to the contrary, and the following cases are cited: *Beaubien v. Cicotte*, 8 Mich. 9; *Taff v. Hosmer*, 14 Id. 309; *Aikin. v. Weckerly*, 19 Id. 482; *Kempsey v. McGinniss*, 21 Id. 123; *McGinnis v. Kempsey*, 27 Id. 363.    In *Beaubien v. Cicotte* and *Taff v. Hosmer*, the point was not directly decided.    In *Aikin v. Weckerly* it appears to be distinctly held that the burden of proof is with the proponent.    At page 503 the Court say:

"In these testamentary cases, the burden of proving capacity is not merely cast in the first instance upon those averring it, but it abides with them during the trial."

In *Kempsey v. McGinniss,* at page 148, the Court say:

"In this particular class of cases, and upon the question of mental soundness or unsoundness, after a *prima facie* case has been established by the proponents, the case, for all purposes connected with the order of proof upon that question, stands the same as if the burden of proof, throughout, rested upon the contestants to show mental incapacity."

It was further held in that case that the contestants, before they rested, were bound to introduce all their testimony in support of their case, and that they could not introduce independent evidence after the proponents had fully gone into their evidence and rested. That case virtually places the burden of proof upon the contestants.

In *McGinnis v. Kempsey,* 27 Mich. 373, the charge to the jury that the law raised a presumption in favor of sanity was sustained, and the Court held that the statute was not "intended to put aside altogether, and for all cases, the common-law presumption in favor of sanity." The statute reads: "Every person of full age and sound mind," etc., may dispose of his property by will. How. Stat. § 5785. Several of the authorities above cited, in some of which the language of the statute is stronger than ours, hold that the statute does not change the burden of proof to the proponents. If the expression "of sound mind" were omitted from the statute, it would make no difference with the proof required. The will could then, as well as now, be set aside for incompetency. The statute only declares the rule of the common law which requires parties competent to contract and to convey; it does not change the rule of evidence and of presumptions. When insanity has been proven to exist, it has been held that the burden is on the proponents to show that the will was

executed during a lucid interval. In so far as the above cases hold the burden of proof to be with the proponents, I think they should be overruled.

2. As stated in the former opinion, the question of undue influence was withdrawn by the court from the consideration of the jury for want of any evidence to sustain it. The question, therefore, becomes unimportant, except as it involves the right of the contestants in their opening to the jury to characterize this will as "unnatural and inofficious." Every person possesses the sacred right to dispose of his property by sale, gift, or devise, as he sees fit. The right to make a will implies the right to change the descent of property from that prescribed by the law. No will is necessary to secure the descent of property according to the statute. No presumption of undue influence therefore arises from the mere fact that one having no children devises his property to other than his collateral heirs. The exercise of this right cannot be denounced as unnatural or inofficious, without evidence of facts on which to base the charge. *Latham v. Udell*, 38 Mich. 238; *Fraser v. Jennison*, 42 Id. 206; *Rice v. Rice*, 50 Id. 448; *Potter's Appeal*, 53 Id. 106; *Schofield v. Walker*, 58 Id. 96; *Maynard v. Vinton*, 59 Id. 139; *Campbell v. Campbell*, 75 Id. 53; *Spratt v. Spratt*, 76 Id. 384; *Stebbins v. Stebbins*, 86 Id. 474. Fraud and undue influence are never presumed.

3. It was not the intention of the writer of the former opinion to hold that an attorney, in his opening statement to the jury, may not state the propositions of law upon which he relies. It was the argument of the law, as well as of the facts, to the jury which was there held improper, and in my judgment that opinion is in entire accord with the former opinions of this Court. The record contains 18 pages of the learned counsel's opening statement to the jury. It was a skillful argument, and one well calculated

to prejudice the minds of the jury.    The only foundation
for the statement in regard to the flies is found in the
evidence of one Dr. Gallagher, who was an attendant in
the sanitarium where Mrs. King went for treatment, and
where she remained from the 16th to the 23d of December.
His testimony is as follows:

" At one time I took pills to her.    She would not take
the pills; said they were flies' heads.    I then went down
stairs and got a fly's head, and she took it.    I said noth-
ing to her to make her take the fly's head."

It does not appear that she knew it was a fly's head.
Such a statement to the jury, with only this foundation
for it, is, in my judgment, not only extravagant, but
wholly unjustifiable, and especially in a case which occupied
several weeks in the trial.    It will not do to say that the
learned counsel honestly made the statement.    The more
honestly such statements are made the greater the damage
that will result to the opposite party.    Counsel undoubt-
edly relied upon the statements of some other party than
the witness himself.    In such case, the party litigant, in
whose favor the statements are made, must bear the
consequences.

4. I think the Mix letters were admissible in so far as
they covered the period during which Mrs. King was at
his house.    Mr. Mix was a witness for the contestants,
and had testified to her conduct and condition while there.
His testimony was taken by deposition.    During that time
he wrote several letters to Mr. King in regard to the
health and condition of Mrs. King.    These letters were
proven by Mrs. Mix, who appeared as a witness upon the
trial, to have been written by her husband.    No allusion
whatever is made in them to the matters testified to by
him.    When an attempt is made to impeach a witness or
discredit his testimony by his own written documents, the
usual way is to show him the documents, and, if he admits

they were written by him, they then become admissible. The usual rule is to read letters in evidence after the cross-examining counsel has opened his case to the jury. 1 Greenl. Ev. § 463. If these documents are of such a character that no re-examination is competent to explain them, then they are admissible at any time before the party has rested his case. I think these letters were clearly of that character, and were therefore admissible upon proof that they were written by him.

5. I deem it entirely clear, upon reason and common sense, that no one should give his opinion to the jury that a testator was insane or incompetent until he has stated some conduct, language, or acts inconsistent with sanity or competency. The theory upon which those not medical experts are permitted to add the weight of their opinion to the facts to which they have testified is that it is not always possible for the witness to describe to the jury the appearance and manner of the person about whom they are testifying. None of the witnesses whose testimony is given in the former opinion testify that there was any appearance or conduct in Mrs. King which they did not describe. They stated evidently all they knew, and it would, in my judgment, be a travesty upon justice to hold that the testimony of either was sufficient to justify an opinion. One may say and do all the things which those witnesses testified to, and still be entirely sane, and competent to make a will. Acts of eccentricity may be admissible in this class of cases, to be used in connection with other facts, but it does not follow that one showing eccentricities of character is either insane or incompetent to make a will, nor that one seeing acts of eccentricity alone is competent to give an opinion as to his sanity or capacity. The same is true of acts of excitability of temper, of miserly conduct, and the like; and the only difficulty that can arise upon the trial is to determine what acts are con-

sistent with sanity and competency, and what not. In case of doubt this must be left to the jury. But the court must determine whether the witness possesses sufficient knowledge to give his opinion. Opinions are not admissible to aid a jury, except by those shown to be competent to give them. The universal practice is to show the education and experience of medical, mechanical, and other experts, and their knowledge of the case about which they are to testify, before their testimony is admitted. It will not be contended that a medical expert would be permitted to give his opinion as to the testamentary incapacity of Mrs. King upon the facts testified to by the witnesses whose testimony is stated in the former opinion. Why, then, should these witnesses themselves be permitted to give their opinions, when they do not state to the court anything else as the basis of their opinions, and do not state that there was anything either in her appearance, manner, or acts which they could not describe, but which operated on their minds in the conclusions reached? When a competent witness has testified that in his opinion the testator was incompetent to make the will, it then becomes a question of fact for the jury, and it is of no consequence to the appellate court how strong the testimony is upon the one side or how weak upon the other. The verdict of the jury is conclusive when there is any competent evidence to sustain it. Is it a reasonable rule that the wills of persons whose competency to manage their business affairs when living was never questioned, who had the ability and shrewdness through a long life to amass and retain property, who built houses, who borrowed and loaned, and who attended to all their own affairs up to the very date of the will, may be set aside by a jury upon such evidence?

6. The case of *People v. Garbutt*, 17 Mich. 9, does not go to the extent which is claimed by the contestants, as appears from the following language from page 17:

" The defense offered to show that insanity had been developed in a brother, arising from a cause similar to that which, it was alleged, had induced the destructive act of the defendant; and this fact was sought to be placed before the jury as throwing some light on the defendant's conduct and accountability. Although this evidence could not be very satisfactory in character, we think it was legally admissible."

Had that been a will case, and the insanity of the brother been offered as evidence of incompetency to make a will, it is evident that no such conclusion would have been reached by the Court. That decision sustains the only reasonable rule, even in criminal cases, that the insanity must either be shown to be hereditary, or be similar in conduct or cause to that of him whose act is in question. The testimony as to the insanity of Mrs. King's sister was given upon a former trial. The only evidence of the insanity of her niece, Miss Octavia Bates, is the testimony of Miss Bates herself, and amounts to this only,—that she went to the asylum, and remained there six months. No symptoms of her trouble are given, no physician testifies, and contestants rely upon the naked fact that she was six months in an asylum. An inference of the insanity and incompetency of Mrs. King was sought to be drawn from this fact. I cannot yield assent to such a doctrine.

7. One Mrs. Kimball, a witness for contestants, was permitted, under objection, to answer the following question:

" Don't you think it possible that this will could have been prepared and given to Mrs. King without telling her its contents, and without her knowing what it was, and for her to have it signed and executed, telling the witnesses that it was her will, considering the condition she was in on the 31st day of July, 1886,—during the month of July, 1886,—without knowing or comprehending what was in it?"

The incompetency of this question is apparent.

I see no reason for any change in the former opinion of the Court.