*In re* CURTIS' ESTATE.

SOULE *v.* HENRY.

1. APPEAL AND ERROR—SCOPE OF REVIEW—OBJECTIONS NOT RAISED IN TRIAL COURT.

Where in some instances no objections are made as to cross-examination of defendant's witness in a will contest in the trial court and in others none is made until after the testimony is received, such objections are unavailable on appeal.

2. SAME—SCOPE OF REVIEW—INSTRUCTIONS—FAILURE TO REQUEST —HARMLESS ERROR.

In a will contest, in which the issues are undue influence and mental incapacity, improper remarks by proponent's attorney and improper cross-examination of a witness are not reversible error where the court would have been warranted in withdrawing the question of undue influence from the consideration of the jury, and the evidence tending to show mental incapacity was meager, and that tending to show capacity abundant, and contestant fails to re-

quest an instruction with reference to such remarks and questions.

3. WILLS—UNDUE INFLUENCE—INSTRUCTIONS.

In a will contest an instruction that the influence to vitiate the will must have been such as to amount to force and coercion, destroying testator's free agency, and that there must be proof that the will was obtained by such coercion, was proper.

4. SAME.

An instruction that the undue influence which will defeat a will need not be by physical force, constraint, or coercion, but it must be an influence, either of fraud, artifice, or some other act of human ingenuity and cunning with an overmastering will, such as subordinates the will of the testator to the will of another so that the alleged will does not show the free will of the testator, but the will and purpose of another, was proper.[1]

5. SAME.

An instruction that if the will was obtained by kindness amounting in itself to such persuasion as to overcome the will and natural inclinations of the testator the same would be void and no subsequent act or parol ratification could again make it a valid will, was proper.

6. SAME—MENTAL COMPETENCY—INSTRUCTIONS—BURDEN OF PROOF.

An instruction that the burden of proof was upon the contestant to show that testator, at the time he executed the instrument, was mentally incompetent to make same, was proper.

7. SAME—MENTAL COMPETENCY—PRESUMPTIONS—STATUTES.

Under Act No. 314, Pub. Acts 1915, chap. 17, § 58 (3 Comp. Laws 1915, § 12546), providing that in proceedings for the probate of wills it shall not be necessary for the proponent in the first instance to introduce any proof to show the competency of the decedent to make a will, but the like presumption of mental competency shall obtain as in other cases, the presumption as to mental capacity continues throughout the trial and a contestant assailing such mental capacity has and must assume the burden of proof.

Error to Allegan; Cross, J.  Submitted January 2, 1917.  (Docket No. 7.)  Decided July 27, 1917.

[1] On burden of proof of testamentary capacity, see notes in 17 L. R. A. 494; 36 L. R. A. 733.

Rolland L. Soule presented for probate the last will and testament of Frank W. Curtis, deceased. The will was allowed in the probate court, and Nellie F. Curtis Henry appealed to the circuit court. Judgment for proponent. Contestant brings error. Affirmed.

*W. J. Barnard,* for appellant.

*Clare E. Hoffman* and *Edward J. Anderson,* for appellee.

FELLOWS, J.   Frank W. Curtis at the time of his death was 64 years old. He was by occupation a painter, paperhanger, and engaged in other manual labor. He had lived for many years in Plainwell, Allegan county, and was the owner of two houses in that village, each worth about $1,800 or $1,900; one, the older of the two, being free from incumbrances, the other somewhat incumbered. His personal property was limited in amount, and consisted of a few household goods and some paint worth, all told, about $200. He and his wife separated in 1900, she obtaining a divorce. Their only daughter, contestant here, was then about 20 years old, and went with her mother. She, however, visited him and brought and sent him presents and did some housework about his home. In April of 1910, Harry Shaw and Grace, his wife, made arrangements with Mr. Curtis that they should occupy one of his houses, the older one, board him, do his washing and mending, he to have his own room and was to pay them $1 per week, in addition to the use of the house. This sum was later increased to $5 per month. He frequently expressed entire satisfaction with the home and care given him by the Shaws, and later told his friends of his intention to leave them the home. On November 21, 1914, Mr. Curtis sent for Mr. Rolland L. Soule, whom he had known for a great many years, and who

had been engaged in the banking and insurance business in Plainwell, and requested him to make his will. He told him he wanted to give the house they were living in and his personal property to Mr. and Mrs. Shaw and his other house to his daughter, Nellie. Mr. Soule prepared the will accordingly, and the same was duly executed. Mr. Curtis also informed Mr. Soule that he was fearful that his daughter might attempt to break the will, and thought it would be a good plan to have a deed to the Shaws of the house and lot executed, and left in a third party's hands to be delivered at his death. The deed was also prepared by Mr. Soule and was executed by Mr. Curtis and was taken away by Mr. Soule, with instructions from Mr. Curtis to deliver to the Shaws at his death. On the 17th of December following, Mr. Soule was again called to the Curtis home and informed by Mr. Curtis that he was not satisfied with the deed not being on record, and that he wanted the deed recorded, and wanted a life lease and agreement for his support and care from the Shaws. The life lease and agreement were accordingly prepared and executed, and the deed to the Shaws was then recorded. Mr. Curtis lived until June 11th following, and was cared for by the Shaws. He frequently expressed his entire satisfaction with the care given. After his death the will was offered for probate and contested by the daughter, Nellie, on the grounds of undue influence and mental incapacity. It was admitted to probate in the probate court and its validity sustained on appeal to the circuit court. Contestant brings the case here, and her counsel groups the assignments of error under three heads, viz.: *First*, errors committed in prejudicial cross-examination and prejudicial remarks made by proponent's counsel; *second*, errors in charge of the court given *sua sponte*; *third*, error in refusing contestant's request to charge as to the burden of proof.

We shall follow the plan outlined by contestant's counsel in his brief and consider the errors assigned in the order named:

*First.* All of the errors assigned on this branch of the case are not available to the contestant; in some instances no objection at all was made, in others none was made until after the testimony was received; in other instances the trial court sustained the contestant. In some instances the conduct of proponent's attorney was subject to criticism, but this case is by no means a close one. A careful examination of the record satisfied us that the trial court would have been justified in withdrawing the question of undue influence from the jury. *Severance* v. *Severance*, 90 Mich. 417 (52 N. W. 292); *Lamb* v. *Lippincott*, 115 Mich. 611 (73 N. W. 887); *Peninsular Trust Co.* v. *Barker*, 116 Mich. 333 (74 N. W. 508); *Blackman* v. *Andrews*, 150 Mich. 322 (114 N. W. 218); *In re Williams' Estate*, 185 Mich. 97 (151 N. W. 731); *In re Ganun's Estate*, 174 Mich. 286 (140 N. W. 561). The evidence tending to show mental incapacity was meager; the evidence tending to show mental capacity was abundant. Contestant made no suggestion to the court that the jury be instructed with reference to counsel's remarks or questions. Under the circumstances of this case we are convinced no prejudicial error was committed in this regard.

*Second.* Error is assigned upon the instruction of the court upon the question of undue influence; particular stress being laid upon the following excerpt:

"The influence to vitiate this will must have been such as to amount to force and coercion, destroying his free agency and there must be proof that the will was obtained by this coercion."

The court further instructed the jury upon this subject:

"You are further instructed that the undue influence which will defeat a will need not be by physical force, constraint, or coercion, but it must be an influence, either of fraud, artifice, or some other art of human ingenuity and cunning with an overmastering will, such as subordinated the will of the testator, Frank W. Curtis, to the will of another, so that the alleged will does not show the free will of Frank W. Curtis, but the will and purpose of another. * * *

"You are instructed that, if the will in this case was obtained by kindness amounting in itself to such persuasion as to overcome the will and natural inclinations of the testator, the same would be void and no subsequent act or parol ratification could again make it a valid will."

It is unnecessary to quote further from the charge upon the question of undue influence, as no error was committed in the instructions upon this subject. *Maynard* v. *Vinton*, 59 Mich. 140 (26 N. W. 401, 60 Am. Rep. 276) ; *In re Ganun's Estate, supra*. The trial court would have been justified in withdrawing this branch of the case from the consideration of the jury; he did not do so, but fairly submitted it. We have examined the other errors assigned upon the charge, and find all of them without merit; the charge was an extremely fair one to the contestant, and she has no cause for complaint.

*Third.* The contestant requested the court to instruct the jury that the burden of proof upon the question of mental capacity rested with the proponent. The court, however, charged:

"The burden of proof in this case is upon the contestant, Nellie F. Curtis Henry, to show that Frank W. Curtis at the time he executed this instrument was mentally incompetent to make the same."

Error is assigned both upon the refusal to instruct and upon the instruction as given. These assignments of error raise the important question in the case. The requests were in accordance with the holdings of this

court in numerous cases; among them see *Beaubien* v. *Cicotte*, 8 Mich. 9; *Taff* v. *Hosmer*, 14 Mich. 309; *Aikin* v. *Weckerly*, 19 Mich. 482, 503; *McGinnis* v. *Kempsey*, 27 Mich. 363; *Prentis* v. *Bates*, 93 Mich. 234, 245 (53 N. W. 153, 17 L. R. A. 494); *In re Mansbach's Estate*, 150 Mich. 348 (114 N. W. 65). Unless the rule long established and adhered to by this court as to the burden of proof upon the question of mental capacity in will cases has been changed by the recent judicature act, these assignments of error are well taken. In actions seeking to set aside deeds on the grounds of mental incapacity, the burden rests with the party assailing the instrument; in actions upon contracts, written instruments, and negotiable paper, the burden is upon him alleging mental incapacity. This jurisdiction had, however, adhered consistently to the rule announced in the earlier decisions requiring the proponent in will cases to establish mental competency by a fair preponderance of the evidence, and the usual presumption of sanity and competency which obtained in other cases was not sufficient to carry a will case to a jury. That this jurisdiction was not in accord with many other jurisdictions on this question is illustrated by the following cases cited by Mr. Justice GRANT in his dissenting opinion in *Prentis* v. *Bates*, *supra: McCulloch* v. *Campbell*, 49 Ark. 367 (5 S. W. 590); *Saxon* v. *Whitaker's Executor*, 30 Ala. 237; *Pettes* v. *Bingham*, 10 N. H. 514; *Perkins* v. *Perkins*, 39 N. H. 163; *Rush* v. *Megee*, 36 Ind. 69; *Turner* v. *Cook*, 36 Ind. 129; *Chandler* v. *Barrett*, 21 La. Ann. 58 (99 Am. Dec. 701); *Mullins* v. *Cottrell*, 41 Miss. 316; *Fee* v. *Taylor*, 83 Ky. 259; *Harris* v. *Hays*, 53 Mo. 96; *Taylor* v. *Creswell*, 45 Md. 430; *Elkinton* v. *Brick*, 44 N. J. Eq. 158 (15 Atl. 393); *McCoon* v. *Allen*, 45 N. J. Eq. 708 (17 Atl. 824); *Trumbull* v. *Gibbons*, 22 N. J. Law, 155; *Meeker* v. *Boylan*, 28 N. J. Law, 274; *Blake* v. *Rourke*, 74 Iowa, 519 (38 N. W. 394);

*Stephenson* v. *Stephenson,* 62 Iowa, 163 (17 N. W. 456) ; *Grubbs* v. *McDonald,* 91 Pa. 236; *Egbert* v. *Egbert,* 78 Pa. 326; *Thompson* v. *Kyner,* 65 Pa. 368; *Carpenter* v. *Calvert,* 83 Ill. 62; *Wilbur* v. *Wilbur,* 129 Ill. 392 (21 N. E. 1076) ; *Allen* v. *Griffin,* 69 Wis. 537 (35 N. W. 21) ; *Barnes* v. *Barnes,* 66 Me. 300.

We may assume that the commission which framed the judicature act and the legislature which passed it had this situation in mind. In the chapter on Evidence (see Act No. 314, Pub. Acts 1915, chap. 17, § 58, 3 Comp. Laws 1915, § 12546) it is provided:

"In proceedings for the probate of wills, it shall not be necessary for the proponent in the first instance to introduce any proof to show the competency of the decedent to make a will, but the like presumption of mental competency shall obtain as in other cases."

The power of the legislature to prescribe upon whom the burden of proof shall rest or to alter the rule announced by the court upon that subject is not denied, but it is vigorously contended that the section above quoted only changes the rule as to the amount of proof required in the first instance to make out a *prima facie* case, and does not prescribe a rule of presumption that continues throughout the trial. We cannot accede to so narrow a construction. To so hold would be to say that it was the legislative intent that a presumption of mental competency existed at the beginning of the trial, only to be dissipated upon the trial by attack; we cannot accede to the view that under the section above quoted a presumption of mental capacity exists at the beginning of the trial, but that at some stage of the proceedings that presumption vanishes, and the burden again shifts back upon the proponent. Such a construction would not only do violence to the purpose of the section, but would not give force to all the language thereof. The section provides, not only that proof of mental capacity shall not be required in the

first instance, but also provides, "But the like presumption of mental competency shall obtain as in other cases." In other cases there is a presumption of mental capacity, not only in the first instance, at the beginning of the trial, but also at its close. Proceedings for probate of wills by this section now have the same presumption of mental capacity that other cases involving that question have; in other cases the party assailing such mental capacity has and must assume the burden of proof.

It follows that the court correctly refused contestant's requests, and correctly instructed the jury as to the burden of proof. The judgment must be and is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.