LAMB *v.* LIPPINCOTT.

|115    611.
|136    ⁹197·

115   611
f149  ⁰172|

1. APPEAL—OBJECTIONS NOT SHOWN BY RECORD—STATEMENTS IN BRIEF.

> The statement in a brief that the stenographer's minutes show that certain objections were made and exceptions taken cannot be considered on appeal, where the objections do not appear in the record.

2. SAME—REMARKS OF COURT.

> In determining whether remarks made by the court in the course of a trial were improper and prejudicial, the context, and the circumstances under which they were uttered, must be considered.

3. EVIDENCE—SUBPŒNA DUCES TECUM—EXCUSE.

> It is a sufficient excuse for the failure of a witness served with a subpœna *duces tecum* to produce the paper required that he is unable to find it after diligent search, and does not know where it is.

4. SAME—TRIAL—DISREGARD OF JUDICIAL MANDATE.

> A witness testified that he had certain papers mentioned in a subpœna *duces tecum* which had been served upon him, but claimed that they were not of such a nature that the party was entitled to examine them. Thereupon the court stated that the papers might be produced for his inspection, but consented, upon request of the witness, that the matter should be postponed until the next day. The record on appeal did not disclose that the subject was again brought up during the trial. *Held,* not to show that the court refused to compel obedience to its mandate.

5. WILLS—PROOF OF EXECUTION.

> The fact that only two of the three subscribing witnesses to a will were called by proponent before the document was received in evidence was not prejudicial to contestant, where it was so received upon the statement of proponent's counsel that the third witness would be called later, and he was so called, and was cross-examined at length by counsel for contestant.

6. EVIDENCE—EXCLUSION OF HYPOTHETICAL QUESTION.

> The exclusion of a hypothetical question put to a medical witness is not prejudicial where the subject-matter is left

open to inquiry, and such information as the witness, possesses is obtained through another form of question.

7. WILLS—EVIDENCE OF ALTERATION.

An inference that a will has been altered or forged cannot be drawn from the fact that it is written on one side of two pieces of paper, instead of on the two sides of one piece, when the person who drew the instrument testifies that he had no legal cap paper, and, supposing that a will should be written only on one side of the sheet, he tore a sheet of foolscap in two, and pasted the ends together, whereby it happened that the testator's signature came just below where the sheet was joined.

8. SAME—UNDUE INFLUENCE.

That the beneficiary in a will, for a long time, was intimate with and did business for the testator, who was at intervals afflicted with insanity, that he enjoyed the testator's respect and confidence, that he had married the testator's only child, and that they had been members of the same household for a number of years, raises no presumption of undue influence.

9. SAME—MENTAL COMPETENCY—OPINION OF WITNESS.

The opinion of a witness that a testator was sane is competent, where it appears that he was well acquainted with the testator, and had never seen anything unusual in his speech or actions; but before a witness can express an opinion that the testator was insane, he must testify to something that the latter said or did fairly tending to show insanity.

Error to Lapeer; Smith, J. Submitted November 4, 1897. Decided January 25, 1898.

Edwin Lamb presented for probate the will of Jesse Emmons, deceased. The probate was opposed by Harry H. Lippincott and others. The will was sustained in the probate court, and an appeal was taken to the circuit. From a judgment for proponent, contestants bring error. Affirmed.

*Dwight N. Lowell* ( *W. W. Stickney*, of counsel), for appellants.

*Geer, Williams & Halpin*, for appellee.

MOORE, J. Jesse Emmons died in August, 1893. His father and mother at times had both been insane; also several of his brothers and sisters. His wife died a good

many years ago. Mr. Emmons was a capable business man. He had been a farmer, and a member of various business enterprises. His only child (a daughter) married Edwin Lamb. There were periods in the life of Mr. Emmons when he was given to melancholia, and feared that harm would come to himself, and that he might do harm to others. In April, 1883, he was committed to the Eastern Insane Asylum, where he remained until July, when he was discharged as "improved." In April, 1884, he again entered the asylum, where he remained until in October, when he was again discharged as "improved." In the spring of 1889, Mrs. Lamb, who was somewhat along in years, was about to give birth to her first child. Mr. Emmons was much worried about the outcome, and feared that it might have a bad effect upon himself. It is the testimony of his physicians that he desired to re-enter the asylum, and he did so in March, 1889, where he remained until June, 1890, when he was discharged again as "improved." It is the claim of proponent that there was no period of Mr. Emmons' life, prior to the making of his will, when Mr. Emmons was not competent to attend to all ordinary business affairs; and the testimony of the physicians, including the superintendent of the asylum, tends to support that contention. This was denied by contestants, and they offered testimony which they claim supports their theory.

For a number of years, Mr. Emmons had been associated in business with his son-in-law, Edwin Lamb, and with J. C. Lamb, who was the father of Edwin Lamb, and for a good many years prior to his death he had been an inmate of the same household as Edwin Lamb. Mrs. Edwin Lamb died during her confinement, in the spring of 1889. As already stated, Mr. Emmons was discharged from the asylum in June, 1890. Upon his return to Dryden, he resumed his living with Edwin Lamb. In December, 1890, he told Jacob C. Lamb, the father of Edwin Lamb, that he desired to make his will, and gave Mr. Lamb a memorandum, and requested Mr. Lamb to draw the will for

him. Mr. Lamb testifies that he took the memorandum, and made a pencil draft of the will, which was drawn so as to express the desire of Mr. Emmons, and asked Mr. Tucker to copy the draft with pen and ink. Mr. Tucker testifies that he had no legal-cap paper, and that, supposing a will should be written only upon one side of the paper, he tore a sheet of foolscap in two, and the top half of one sheet was pasted to the bottom half of the other. The will was not long, and it was all contained on one side of the paper as thus prepared; Mr. Emmons' signature appearing just below where the sheet was joined. When the will was drawn, it was signed by Mr. Emmons, and, at his request, by Mr. Tucker, Mr. Parker, and J. C. Lamb, as witnesses. By the terms of the will, Mr. Emmons gave all his property to Edwin Lamb. In case Mr. Emmons outlived Mr. Lamb, all the property was willed to the brothers and sisters of Mr. Emmons, share and share alike. After a contest in the probate court, the will was allowed. The case was appealed to the circuit court, and was again allowed. The contestants bring the case here by writ of error.

Counsel complain of remarks made by counsel for the proponent in his opening to the jury. The record does not disclose that the objections now made were made at the trial. It is stated in the supplemental brief of counsel that the stenographer's minutes show that objections were made and exceptions taken. This court, however, must be governed by the record as it appears here.

Counsel complain with a good deal of earnestness of remarks made by the court in the course of the trial which it is claimed were improper and prejudicial. By separating sentences, here and there, from what preceded and followed, some plausibility is given to this contention; but when the sentences are put with the context, and the circumstances under which they were uttered are taken into consideration, we do not think that it can be said that the remarks were so improper or prejudicial that the case ought to be reversed for that reason.

The contestants had caused a subpœna to be issued, directing Jacob C. Lamb to produce the memorandum given to him by Mr. Emmons when the will was drawn, and Edwin Lamb to produce other papers. Mr. J. C. Lamb testified that he had made diligent search for the memorandum, and could not find it, and did not know where it was. We think this would justify Mr. Lamb in not producing the paper. Mr. Edwin Lamb testified that he had the papers mentioned in the subpœna directed to him in Lapeer. His counsel claimed that they were papers of such a nature that the contestants were not entitled to examine them. The judge said that the papers might be produced, when he would determine whether they were proper or not. At this point in the discussion, Mr. Williams, one of the counsel for proponent, suggested that he would like the matter to go over until morning, as his associate counsel was then absent, attending a funeral. Counsel for contestants made no objection to a postponement of the matter until morning, and there is nothing in the record to show that the subject was again brought up. Under these circumstances, we do not think that it can be said that the court refused to compel obedience to its own mandate.

After proving the execution of the will by Mr. Parker and Mr. Tucker, it was offered in evidence. Objection was made to its reception, until Mr. J. C. Lamb, the other witness, was sworn. It was then stated by counsel that the will had been proven by the number of witnesses required by the statute to sign as witnesses; that they did not desire to call Mr. Lamb then, but would call him later. The will was then read in evidence, and this is said to be error. Mr. Lamb was called later, and was cross-examined at great length by counsel for contestants. The contestants were not obliged to make Mr. Lamb their own witness. They had the same opportunity to cross-examine him they would have had if he had been called earlier. They and the court were told before the will was read that Mr. Lamb would be called later. We do not see how the contestants

were prejudiced, and think that the case comes within the ruling of *Abbott* v. *Abbott*, 41 Mich. 543: *Fraser* v. *Jennison*, 42 Mich. 207.

Dr. Jones was produced as a witness for the proponent. He was asked by counsel for contestants a hypothetical question, which was objected to, and the objection sustained,—the court saying to the counsel that his ruling was simply as to the form of the question, but the subject-matter was open to their inquiry; and they did pursue the inquiry in another form, and obtained such information from the doctor as he possessed. We do not think that this was error. See *Fraser* v. *Jennison*, 42 Mich., at page 235.

One objection to probating the will was that the will had been forged or changed by substituting another paper for a portion of it. It is said that it is a suspicious circumstance that the will should be written on one side of two pieces of paper, instead of being written on the two sides of one piece of paper. We have the original will before us. There is nothing in its appearance to indicate that it has been changed or altered, while the testimony was of a positive character that it had not been. The court very properly told the jury that there was no proof from which they could infer that the will had been forged or changed.

Another ground of contention was undue influence. The court told the jury that there was no proof of undue influence. This is said to be error. It is urged that Mr. Edwin Lamb was virtually the guardian of Mr. Emmons, and did all his business for a series of years, and that, as he is the beneficiary under the will, under the circumstances the presumption arises that he influenced Mr. Emmons to make the will as he did, and it is incumbent upon him to do away with the presumption. There is not a particle of proof that J. C. Lamb or Edwin Lamb in any way ever used any influence upon Mr. Emmons to induce him to make this will, or any will. It is true that Mr. Emmons was intimate with these men for a long period of time, and apparently had much respect for their

judgment, and for them personally. It is also true that Edwin Lamb had married his only child, and they had been members of the same household for a long series of years, and Mr. Lamb had done more or less business for Mr. Emmons. But it does not follow from this condition of things that Mr. Lamb substituted his will for the will of Mr. Emmons. It will serve, rather, to explain why Mr. Emmons made Mr. Lamb the object of his bounty. *Maynard* v. *Vinton*, 59 Mich. 153 (60 Am. Rep. 276); *Severance* v. *Severance*, 90 Mich. 417.

Counsel say the court erred in allowing the opinions of professional and nonprofessional witnesses without a proper foundation being laid, and think the rule laid down in *Prentis* v. *Bates*, 93 Mich. 234 (17 L. R. A. 494), and *People* v. *Borgetto*, 99 Mich. 341, is illogical, and indefensible upon principle, and argue that the same acquaintance with a decedent which would be a sufficient foundation to enable a witness to express an opinion that the decedent was sane should be deemed sufficient to enable a witness having a like acquaintance to express an opinion that the decedent was insane, if that was the opinion of the witness. We think that counsel overlook the facts which make the distinction necessary. Sanity is the rule; insanity, the exception; and when it appears that a witness has known a person for a long time, and has never known anything unusual, either in his speech or actions, he is competent to express an opinion that the man is sane, because sane or normal acts and speech are consistent with the normal condition, sanity. Insanity, however, not being a normal condition, before one is competent to say that another is insane, he must state some fact that is inconsistent with sanity; and this is not done until the witness is able to testify to something that the man has said or done which fairly tends to show insanity. We are content with the rule as stated in *Prentis* v. *Bates* and *People* v. *Borgetto*, and we think that the trial judge did well to follow it. The question of the competency of

Mr. Emmons was left to the jury, who found that he was competent to make the will.

It will not be necessary to discuss the other assignments of error. The case was fairly tried, and the judgment should be affirmed.

The other Justices concurred.