## In re ABEL'S ESTATE.

### ABEL *v.* ROOSENRAAD.

1. ESTATES OF DECEDENTS — EXECUTORS AND ADMINISTRATORS —
CLAIMS — APPEAL FROM JUDGMENT OF COMMISSIONERS ON
CLAIMS.
   Portions of a claim allowed by the commissioners on claims,
   are, on appeal to the circuit court, correctly included in the
   verdict by direction of the court, in favor of the claimant
   who appeals, no objection being made to the justice of such
   allowance or appeal taken by the estate.

2. SAME—TRIAL.
   Whether claimant was entitled to an item for work done in
   clearing land, was properly left, under conflicting evidence,
   to the jury.

3. SAME—PARENT AND CHILD.

As evidence of the value of services rendered by claimant and of the claim of claimant that they were not gratuitously rendered, notes executed by claimant's father to him, and deposited with a third person without delivery, were competent and admissible, it also appearing that there was evidence of a promise made by the father to compensate his son for the services.

4. SAME.

It is not essential to a recovery that claimant should establish a formal contract: if the facts and circumstances attending the performance of the work and its acceptance are sufficient to rebut the presumption that the services were gratuitous, and to authorize the inference that both parties acted under the understanding that they were to be paid for, the parent is liable.[1]

5. SAME—BILLS AND NOTES—EXECUTION.

Whether a note of $700 was void for want of delivery was an immaterial question, where claimant made claim for the value of his labor, without relying on the note except as evidence of the intent of decedent and in support of testimony tending to prove an agreement to compensate claimant.

6. SAME—EVIDENCE—ADMISSIONS.

It was not reversible error to exclude from the evidence defendant's offer to show that claimant originally prepared a claim for less than the amount he sought to recover in the case, and started to file it but erased that portion, which was not, so far as the record shows, presented to the commissioners.

7. SAME—TRIAL.

*Held*, also, that an inadvertent statement of the trial court to the jury as to the amount of damages, being immediately corrected, did not warrant the reversal of the judgment.

Error to Ottawa; Cogger, J., presiding. Submitted October 9, 1912. (Docket No. 9.) Decided November 8, 1912.

Henry Abel presented a claim against the estate of John W. Abel which was allowed in part by the commissioners on claims. Claimant appealed to the circuit court

---

[1] The authorities on the general question of the implication of agreement to pay for services rendered by relative or member of household, are reviewed in a note in 11 L. R. A. (N. S.) 873.

where judgment was rendered for the full amount claimed. Defendant estate, by Cornelis Roosenraad, executor, brings error. Affirmed.

*Benn M. Corwin,* for appellant.

*Smedley, Linsey & Lillie,* for appellee.

STONE, J.   This claim was filed in the probate court of Ottawa county against the estate of John W. Abel, deceased, to recover for services performed by claimant for his father, in his lifetime, after claimant had become 21 years of age.   John W. Abel died leaving a widow and ten children—two by a former wife and eight by his widow.   During the father's lifetime he had made several wills, each time disposing of his property in a different way.   So far as appears by this record, in every will except the last one, the testator gave each of his boys a piece of land, and provided that each boy should pay a certain amount of money to one of his sisters.   The last will was made March 17, 1910.   By it the testator gave to his widow one-third of all his estate, and the remainder was to be divided equally among all of his children, share and share alike.   The testator died in September, 1910, and the last will was duly admitted to probate.

After the will was probated, claimant went to the office of the executor, who was also the justice of the peace who drew the will and the notes hereinafter referred to, and made proof of claim based on the two notes as such, and some small items of expense that had arisen about the time of the father's death, in connection with the farm that claimant had occupied.   At the first meeting of the commissioners on claims some question was raised in regard to claimant's claim, and he withdrew the first claim filed and made out a new one, as follows:

> Expenses on 80 acres of land of J. W. Abel, and for moneys expended in clearing, seeding and planting same over and above amount seeded and planted and cleared when taken.

To clearing 6 acres @ $18.00 ---------------------- $108 00
To dynamite------- -- ----------------------------      2 25
To wheat, 8 bushels @ .95-------------------------      7 60
To clover -------------------------------------------      7 00
To timothy------------------------------------------      1 50
To 15 loads of gravel @ 1.50----------------------     22 50
To 60 rods ditching @ .75 a rod ------------------     45 00
                                                    ----------
                                                    $193 85

~~To 8 and 4 months labor for John W. Abel at $200.00~~

~~per year, previous to claimant's marriage        $1,266.00~~

~~$1,459.85~~

This claim was verified by the claimant by an affidavit attached to the claim signed by him and sworn to, in which he swore that there was then due and unpaid on same, over and above all legal set offs, the sum of $193.85. After further consideration claimant struck out the item of $1,266 for labor, as appears by the erasures, and filed another claim for labor based on the two notes, as follows:

> To services performed in labor for John W. Abel, as
> evidenced by two notes given by John W. Abel to
> Henry Abel, one of date of June 2, 1908, for $700.00,
> and one of date of April 21, 1910, for $1,000.00---- $1,700 00

This was verified in like manner, the affidavit stating that there was then due and unpaid on said claims, over and above all legal set-offs, the sum of $1,700. The commissioners on claims rejected the first and last items of said first claim and allowed the remaining five items, amounting to $40.85.

On the second claim the commissioners rejected $700, and allowed $1,000, so that the commissioners allowed $1,000 for labor and $40.85 for money expended, making a total of $1,040.85, but rejected the items for clearing and ditching, and the $700 claimed to be for labor and services represented by the note of June 2, 1908. From this allowance by the commissioners the claimant appealed to the circuit court. On the trial in the circuit court the attorney for the claimant, in his opening statement to the jury, used the following language:

"Now, in presenting these claims to the commissioners, Henry was informed that the notes were no good, that they didn't bind the estate. They were left with Mr. Roosenraad; they were not delivered. And so he put in a claim for services, for staying on the farm so many years after he was 21, amounting to $1,700. He calls it $1,700, not because it figures out exactly that, but because his father intended him to have it, having left two notes amounting to $1,700, and then he puts in a claim for things that he did after his father made his last will, and after these notes were given. He presented a claim to the commissioners on claims for this, $1,700 and the $193.85, making a total claim put in of $1,893.85. The commissioners allowed $1,040.85, which leaves $853 that we are suing for today.

"*The Court:* Are you claiming the whole amount here?

"*Mr. Smedley:* I went on the theory that the balance that was not allowed is all that we are litigating; that is, $853.

"*The Court:* Is there any appeal here by the estate?

"*Mr. Corwin:* No, but I think you can't separate this claim. He has got to prove his whole claim.

"*Mr. Smedley:* We can prove the whole claim, then have the jury subtract, or we can subtract $1,040.85, what the commissioners have allowed."

Upon the trial it was the claim of the claimant and appellee that when he was 21 years of age, in 1899, he was about to leave home; but his father told him that he would like to have him (claimant) stay at home and work, and he would give him more than he could earn elsewhere; and that he remained at home and worked for his father until his marriage. It is also claimed that the father promised to give claimant 80 acres of land, and the father built a house on the piece of land about the time of claimant's marriage in 1905; that claimant and his wife moved onto the land soon after their marriage and have lived there ever since; that claimant had improved the house and farm, believing, or supposing, that it belonged to him.

By a will made in 1908 the father gave this same 80 acres of land to claimant. There was testimony tending

to show that the father had frequently said that he intended to compensate claimant for his services. At the time of making the will of 1908 testator made the following note:

"700.00                    Zeeland, Mich., June 2, 1908.
    "After my death I promise to pay to the order of Hendrick Abel the sum of seven hundred dollars.

                                    his
                        "John W. x Abel.
                                    mark

"Signed in presence of:
    "C. Roosenraad.
    "H. P. Karsten."

There was evidence that the father left this note with the justice of the peace who had drawn the will and note. The justice testified that this note, with others to other children, was left with him until testator's death; then he was to notify claimant about it.

At the time of making the will of March 17, 1910, the will of 1908 was destroyed; but this $700 note was not taken up. When the last will was made it was prepared by the same justice. About a month after it was signed and executed the testator came to the justice and made another note, as follows:

"$1,000.00                  Zeeland, Mich., April 21, 1910.
    "After my death I promise to pay to the order of Hendrick Abel one thousand dollars for labor and other services rendered since his 21st birthday to this date, over and above the $700.00 note previously given.

                                    his
                        "John W. x Abel.
                                    mark

"Signed in presence of:
    "Nellie Roosenraad.
    "Cornelis Roosenraad."

Upon this subject the executor and justice, having been called as a witness for the claimant, testified, among other things, as follows:

"At the time this will was made in March, 1910, the old

will was destroyed. I tore it up at his request. He was alone. I don't know who came to town with him. I think Henry came with him to town, because, if I remember right, he called for him before he left. This note (referring to the $1,000 note) is dated in April. About a month after he made the will he came to my office and made this note for Henry for $1,000.

"*Q.* What talk did you have with him at that time? What did he say when he first came in?

"*A.* He told me at that time that under the circumstances, seeing that he had provided one-third for his wife, the balance to be divided equally among the 10 children, that Henry ought to have something for his work, and he said, 'Now you figure up how much that would be,' and if I remember right, at $125 a year it came to $1,000, and he said: 'Well, then he has got to have that for his labor.' Then I drafted that note. I wrote it the way it reads; that he was to have that over and above what—as you find it there.

"*Q.* Over and above the $700?

"*A.* Yes, but the intention was—

"*Q.* Never mind what the intention was. What did he say?

"*A.* He told me at the time that it did not include the $700. We, as Hollanders, may have a different way of expressing our ideas.

"*The Court:* Mr. Witness, just answer the question, and tell what he said to you.

"*A.* He said that $700 was not included; that he was to have that $1,000 for his labor.

"*Q.* He was to have the $1,000 besides the $700?

"*A.* No, sir; he didn't say that.

"*Q.* Well, you wrote it that way?

"*A.* That is what I wanted to tell. Of course, if I can't say it, why then I won't say it.

"*The Court:* You have a right to tell what he said and what you actually did, but conclusions and theories leave out; that is for the jury.

"*Witness* (continuing): After having our talk I wrote the note 'for labor and other services rendered for me since his 21st birthday to this date, over and above the $700 note previously given.' He did not tell me at that time that he had given Henry 80 acres and built him a house on it, nor at the time I drew the first will. He only told me that I was to draw the will, that Henry was

to have a certain piece of land, but he didn't say where.

"*Q.* In regard to the $1,000 note, when he made that, that was the time he made the last will, was it ?

"*A.* No, sir; the last will was made in March, and this was given in April. At the time he made that note, he did not take it with him. He left it with me, and I filed it with the other papers. It was in my hands at the time he died. It was to be left with me until he died; then I was to notify the boys about it.

" *The Court:* Were you to give it to Henry ?

"*A.* I was to leave it with the other papers until the will was to be probated.

"*Q.* What were you to do, give it to Henry ?

"*A.* I was to notify the boys about it, that they had those notes in my place. I called their attention to it, too, at that time. After their father died I wrote to them, and when they came in I said their father had left these two notes for them. I told Henry that his father had left two notes there, one for $700 and one for $1,000. I showed them to him. He had them in his hands. He left them with me. When I say 'he' I mean Henry. I showed him the whole papers, the will and the notes, and he took them and read them and handed them back to me."

The notes being offered in evidence, the following occurred :

" *Mr. Smedley:* I think that they ought to be admitted in evidence. I offer them also for the purpose of proving how much the old man wanted him to have. This last note recites what it is for.

" *Mr. Corwin :* If your honor please, they are not admissible because there never was any legal delivery, and, no matter what the old man may have some time had in his mind that he intended to give him, it didn't make a perfect gift before his death, it cannot take effect afterwards, and there never was a delivery here, and therefore the note has no value either as evidence or for any other purpose.

" *The Court :* Well, gentlemen, I believe that the two notes are admissible. I don't understand that the claimant here is suing upon these notes as expressed contracts.

" *Mr. Smedley :* No, I am not.

" *The Court :* I think they are admissible as bearing on the claimant's claim.

"*Mr. Corwin:* Does your honor hold that those are admissible as evidence of debt against the estate?

"*Mr. Smedley:* I didn't offer them for that purpose, and the court says he doesn't admit them for that purpose. * * *

"*The Court:* I asked counsel if he depended upon these notes as expressed contracts binding on the estate. He said he did not. Now, the ruling I made was with that idea in view. I believe, in view of the particular language of the second note, that these notes are evidence, that is, competent to go to the jury as bearing on the claim of the plaintiff here — not necessarily conclusive, as a note should be. The objection will be overruled and the notes received in evidence." An exception by contestant's counsel.

There was a good deal of conflict in the testimony with reference to the amount of services rendered by claimant, and the value thereof, and especially as to the ditching and clearing of land, and as to when the latter labor was performed, whether before or after making the last note.

The claimant's wife testified generally as to the services performed by the claimant and herself upon the farm, where the house had been built and where they resided, and she testified to conversations had with the testator after making the last will, in which the following occurred:

"*Q.* Now, afterwards, did you learn that a new will had been made and the land taken away from Henry?

"*A.* Yes, sir; father told me. He came down there all broken up one day, and he said that the things had been taken away from Henry, the land; but he had fixed it so that Henry was to have $1,700 for his wages. He thought that that would make it about even."

There was testimony tending to show that Henry worked the farm, which he occupied, on shares.

The trial at the circuit resulted in a verdict and judgment for the claimant for the full amount claimed, except for the item of ditching. There was also included in the verdict an item of $29.83, which we shall have occasion to refer to later.

The contestant, being the executor, has brought the case here upon writ of error, and there are upwards of 20 assignments of error. The case, however, has been discussed by appellant under certain heads, and we will consider the questions in the order in which they have been discussed, as they are covered by the assignments of error. We quote from the brief of contestant's counsel as follows:

"It is conceded on the part of the contestant that the deceased intended to pay the claimant for his labor on the farm after he was 21 years of age, and before his marriage. This appears from the testimony of contestant, in regard to the making of the $1,000 note by the father, and what the father said at the time the note was made. The only dispute is in regard to the amount which was to be paid for the labor. Contestant claims it was plainly fixed at $1,000 by the father, and that the note for $700 was intended as a gift over and above the labor. Contestant also claims that there was no contract or agreement to pay for clearing or ditching, and that the monthly settlements between father and son rebut any such agreement."

No time need be spent upon the item for ditching, as it is conceded by the attorneys for both parties that this claim was rejected by the jury, as it had been by the commissioners.

The next subject discussed by contestant and appellant is an item of $29.83, which was submitted to the jury. The appellant claims that this was improperly submitted to the jury by the trial judge, and that the record is barren of any suggestion of it until it appears in the charge of the court. Upon that subject the circuit judge in his charge said:

"It appears in this case that on the 19th day of September, the father died, leaving an estate and some heirs. One of them is the claimant or plaintiff in this suit. It further appears in evidence, gentlemen of the jury, that in due course of time the plaintiff filed with the commissioners on claims, appointed by the probate court in that estate, two claims, one amounting to $1,893.85, and the other amounting to $29.83. It is admitted here—it is a

proven fact upon this record—that the claim of $1,893.85 was allowed at $1,040.85; that the claim of $29.83 was allowed by the commissioners. From that allowance there has been no appeal taken by the estate. Consequently, in any event, gentlemen, it will be your duty, under statements of counsel in open court, and under the undisputed evidence, to render a verdict in this case for the claimant for the sum of $1,040.85 plus $29.83, or $1,070.68. There is no dispute about that."

An examination of the original record, in the hands of the clerk of this court, shows that in the certified copy of the record in the probate court, of the allowances and disallowances of claims, by the commissioners, the following appears:

| Name of Claimant. | Amount of Claim. | Amount Thereof Disallowed. | Amount of Final Balance in Favor of Claimant. |
|---|---|---|---|
| Hendrick Abel | $1,893 85 | $853 00 | $1,040 85 |
| Hendrick Abel | 29 83 | Nothing | 29 83 |

It further appears that, on the attention of the attorney for appellant having been called to the omission to print that part of the record, the following stipulation was signed and filed in this case:   (After entitling the case).

"In the above entitled cause the record was printed and there was omitted from the same the return of the probate court filed with the clerk of the circuit court for the county of Ottawa, and it is hereby stipulated by and between the parties to this suit, through their respective attorneys, that counsel on either side may have the right to refer to said return of the probate court, the same as if said return was printed in the record, and without the necessity of amending the printed record by adding the same thereto."

It is very evident that in charging the jury the circuit judge had before him, or at least had in mind, the report of the commissioners, which shows the allowance of the claim of $29.83 unappealed from. He further states that the jury are to include that in their verdict under the statements of counsel in open court, and under the undis-

puted evidence. Nowhere is it claimed that this is an unjust claim against the estate of the deceased. It was a part of the record of the proceedings before the court. The allowance was unappealed from. We see no injustice or impropriety in allowing it to stand as a part of the verdict and judgment in the case. It carried no interest according to the direction of the circuit judge. Under the circumstances, we think there was no error with reference to this item.

The next item discussed is that of clearing the land. This, it will be remembered, was the first item in the claim which had been disallowed by the commissioners. The evidence upon the subject of what this labor was worth, when it was performed, and whether before or after the making of the $1,000 note, was quite conflicting, and there was evidence pro and con upon the subject. The ruling of the court limited this recovery to clearing done after the date of the last note. Of the merits of that claim the jury were the judges, and, as counsel for appellant has simply discussed the merits of the question, we must say that it was a question properly submitted to the jury.

The next item in dispute was with reference to the so-called $700 note, and the interest thereon. This subject presents a question of fact, nothing more nor less. The question was fairly submitted by the court to the jury, and we think properly so, and we find no error in the admission of evidence upon the subject. The notes were introduced in evidence in connection with the claim of the claimant, that the father intended to compensate him for the labor performed, and upon the theory that the notes were some evidence of what the father considered the services of the claimant worth. There being evidence of a promise to compensate on the part of the father, we think this subject has been covered by this court in the following cases: *In re Williams' Estate*, 106 Mich. 490 (64 N. W. 490); *Sammon* v. *Wood*, 107 Mich. 506, 511 (65 N. W. 529).

In the first above-cited case this court held that where a promise is made to compensate for services by will, and the promisor dies without so providing, the value of the services may be recovered as a claim against the estate, and a verbal contract to convey land may be resorted to in an action to recover for such services, for the purpose of negativing the presumption that they were gratuitously rendered.

In the last cited case it was held that an agreement to pay for services at death is valid and enforceable against the estate of the promisor. It is not essential to a recovery by a child for services rendered to a parent that a formal contract be established in relation thereto; but if the facts and circumstances attending the performance of the work and in its acceptance are sufficient to rebut the presumption that the services were gratuitous, and to authorize the inference that both parties acted under the understanding that they were to be paid for, the parent is liable.

Counsel for appellant next discuss the question as to whether the $700 note was a valid gift, claiming that it was void for want of delivery and for want of a sufficient consideration. No time need be spent upon this question, because it appears that it was the claimant's position that his claim was not based upon the two notes, but was one for personal work and labor performed during the eleven years that he worked for the father after he became of age, being for six years before his marriage, and about five years after he married, while living upon the farm; the only object of introducing the notes being to show the language used by the deceased, and to support the testimony in addition to the notes themselves, that the father intended his son to have at least $1,700, the amount of the two notes which he had left with the justice of the peace. It is sufficient to say that there was some evidence in support of this claim, and the question was properly submitted to the jury.

Under the head of "Admissions," counsel for appellant

next discusses the eleventh assignment of error, based upon the refusal of the court to allow claimant's erased claim to be read to the jury. The files in the case showing the claims being in evidence, the following occurred:

"*Mr. Corwin:* For the purpose of the jury, then, I will read the part which was put in here, and which was afterwards stricken out, as testified to by this witness.

"*Mr. Smedley:* I object to him reading to the jury a claim that is not filed.

"*Mr. Corwin:* It shows the claim which he started to file, and which he changed.

"*The Court:* Are you simply reading what is on that paper?

"*Mr. Corwin:* What was put in and stricken out. We have a right to consider it as bearing on the bona fide claim of this man as to what his claims were and what he understood, and whether he understood it one way one minute and another way another minute; one thing one day and another thing the next day. The jury have a right to consider whether or not he is acting squarely in filing this claim.

"*The Court:* It already appears that he did change his claim.

"*Mr. Corwin:* Here is a claim where he goes to work and files a claim for a certain number of years' work, at a certain price per year, and then he strikes it out and makes up his mind he wants something else.

"*The Court:* Just a minute, gentlemen. It is perfectly competent, Mr. Corwin, to show that this plaintiff had filed a claim different from the claim that is here now. That would be perfectly competent, or if he made statements at any other time differing from his claim here; but since because there is something in there erased, that is not the claim. It is erased as much as it could be. It is supposed to have been wiped out entirely. It is simply a method of erasure, that is all. I don't believe that is a paper to exhibit to the jury. They have no right to consider it at all.

"*Mr. Corwin:* It shows, if your honor please, the value he placed, himself, on his own wages.

"*The Court:* It is simply a blank. You wouldn't have any right to consider it, any more than you would turn over here and consider it on that blank sheet there.

"*Mr. Corwin:* Note an exception."

Appellant's counsel claims that the question is governed by *Ludlow* v. *Pearl's Estate,* 55 Mich. 312, 317 (21 N. W. 315), where it was held that it was proper for the defense to show that the claim was originally smaller; that, while such showing would not have been conclusive, the original claim would be in the nature of an admission as to value. We have examined the printed record in the above case, and find that there the change and erasure were made during the examination of witnesses before the commissioners, "near when the evidence was all in." In the instant case, in the language of appellant's counsel: "It shows the claim which he started to file, and which he changed." We think the cases are not similar. It also appears that the claim was never verified except for the amount of $193.85, and it is fair to infer that the claim for $1,266 was never presented to, or filed with the commissioners. It may be doubted therefore whether it was a proper paper to be presented to the jury. In view of the offer of the court to permit counsel to show any statements made by claimant at other times, we are of opinion that the ruling was not reversible error.

The only remaining subject discussed by appellant's counsel is that of a suggested verdict. The question arose in this way: In the course of its charge the court said:

"Was there a contract under the rules which I have already given you? If there wasn't a contract, return a verdict of $1,070.68. If there was such a contract, then what were the services worth? Were they worth more than the claims allowed? If they were, add that amount to the $1,070.68 and figure interest on the $1,700 and add it up and announce your verdict.

"*Mr. Smedley:* Your honor, you said, 'Find out how much it was worth, and then add interest on $1,700.'

"*Mr. Corwin:* I noticed that myself.

"*Mr. Smedley:* You should have said: 'Figure interest on that amount.'

"*The Court:* Did I say $1,700?

"*Mr. Smedley:* Yes.

"*Mr. Corwin:* In other words, suggesting a verdict to the jury.

"*The Court* (to the jury): In the first place determine what amount this plaintiff is entitled to, and then add interest on that at 5 per cent., leaving out the small item of $29.83, and whatever you find, if anything, in regard to the ditch and the clearing of land. I will read a request handed up on that subject: 'If you find that the labor was to be paid for after the death of the father, and you find that the labor is $1,700, due at the death of the father, then he is entitled to interest at 5 per cent. on the $1,700, or such other sum as you find is right, from the death of the father, namely, one year and one month. No interest can be allowed on the other small items, the $29.83, the $40.85, and the other item, if you find them in favor of the claimant."

Counsel for appellant strenuously urges that here was an intimation of what the court believed the evidence established, and that it was reversible error, and he cites many cases on the subject. In other parts of the charge the court had fully left to the jury the amount to be found for labor and services, if anything. We are of opinion that the court here made an inadvertent remark, which it promptly corrected, when its attention was called to it, and that no error, sufficient to reverse the case, was thereby committed. This court has held that, in determining whether remarks made by the court in the course of a trial were improper and prejudicial, the context, and the circumstances under which they were uttered, must be considered. *Lamb* v. *Lippincott*, 115 Mich. 611 (73 N. W. 887). It would be unfortunate to litigants, if an inadvertent remark of the trial judge, corrected at once, like the one we are considering, should be held to be reversible error.

We think that the case was fairly tried, and, finding no reversible error in the record, the judgment of the circuit court is affirmed, with costs against the estate.

MOORE, C. J., and STEERE, McALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.