*In re* LACROIX'S ESTATE.

CHARLTON *v.* LOOK.

1. WILLS—INSANE DELUSIONS.

Will which left bulk of a substantial estate to "the unfortunate blind" of Wayne county, recited that next of kin were disinherited because they had deprived testator, an unmarried man, of his liberty and property and authorized his attorney to bring proceedings to recover property of which he believed himself to have been unlawfully deprived was not dictated by insane delusions where, during period of his commitment as an incompetent person, next of kin or their parents had obtained a large amount of property from testator and he had unsuccessfully litigated property matters with them for a period of years.

2. Same—Undue Influence.

Record was barren of undue influence where there was no evidence of mental incompetency of testator to make his will, he drafted a will in his own handwriting, five years later he redrafted it, changing it but slightly except to include provision stating reason for disinheriting next of kin and will presented for probate was typewritten "substantially like" handwritten draft, the two drafts compared by testator and then duly executed leaving bulk of substantial estate to "the unfortunate blind" of Wayne county for whose welfare he had expressed an interest.

3. Same—Undue Influence—Presumption—Trustees.

Presumption of undue influence on part of trustee under will is not raised where testator and trustee have long been intimate and latter was attorney and attended to business transactions of testator at times afflicted with insanity; nor by failure of testator to leave estate to near relatives with whom he has not been on good terms.

4. Appeal and Error—Disagreement of Jury—Wills.

Ruling of trial court sustaining a will as a matter of law after disagreement of a jury is affirmed on appeal where record is such that had the jury disallowed the will because of mental incompetency or undue influence court would have been compelled to set verdict aside.

Appeal from Wayne; Robertson (William), J., presiding. Submitted October 12, 1933. (Docket No. 93, Calendar No. 37,409.) Decided December 5, 1933.

William Look and another presented the last will of James E. Lacroix for probate. On objections of Eva D. Charlton and others, the matter was appealed to the circuit court. After disagreement of jury, judgment was entered for proponents pursuant to 3 Comp. Laws 1929, § 14535. Contestants appeal. Affirmed.

*Lucking, Van Auken & Sprague,* for appellants.

*Henry C. L. Forler* and *Frank A. Martin* (*Frank W. Atkinson,* of counsel), for appellees.

*Oscar A. Kaufman,* for Harry S. Toy, Prosecuting Attorney.

NORTH, J. On the 27th of October, 1931, James E. Lacroix, then 70 years of age, died testate. His will, dated April 8, 1930, was admitted to probate by the probate court of Wayne county. Upon appeal to the circuit court the will was sustained. Contestants have appealed. They assert invalidity of the will on the ground that the testator had insane delusions which caused him to disinherit contestants and also on the ground of undue influence. As against these alleged grounds of invalidity, in the trial before a jury, the circuit judge sustained the will as a matter of law. On this appeal contestants assert that there was error in the circuit judge's ruling and that instead both issues should be submitted to a jury for determination.

Insane Delusions.—Testator was an unmarried man. Contestants are his nearest surviving relatives, being nieces and nephews to whom testator left none of his property. Instead, subject to a provision for erecting monuments and a bequest of $20,000 to Mrs. Dion, the testator left the residue of his estate, which was substantial in amount, in trust for "the unfortunate blind" of Wayne county. As evidencing insane delusions contestants rely much upon recitals in the following portions of the will:

"Fourth: I have not made any provision for any of my next of kin (relatives), for good and substantial reasons, especially because they have cruelly and maliciously subjected me to and deprived me of

my liberty of action and property to the amount of at least $800,000, as will more fully appear by the records of the probate, circuit and Supreme Court of this State, and did also wrongfully and maliciously charge me with misconduct and wrongdoing, none of which was ever proven in any court, and which were false, malicious and untrue. They, nor any of them, shall not participate in my estate in any manner whatsoever. * * *

"Sixth: * * * I do also hereby authorize and empower and direct my said attorney (Mr. William Look), to bring, maintain and prosecute all suits in any court of this State or of the United States for the recovery of any and all property of which I was unlawfully deprived of and taken from me while under disability as an alleged mentally incompetent person under any decree, or decrees, of the Wayne circuit court, in chancery, on March 5, 1920, and August 5, 1924, or at any time or in any manner whatsoever, and I do also authorize and empower him to prosecute the probate of the last will and testament of my sister, Susan A. Lacroix, deceased, which was duly admitted to probate on September 26, 1918, by the probate court of Wayne county, and also to defend any appeal claimed for the allowance thereof, and do also authorize and direct him to bring and maintain proceedings for any and all damages to which I may be entitled for the wrongs and injuries sustained by me by reason of the persecution and wrongful and illegal acts of my relatives towards me and my property as appear by the court records.''

Contestants assert that there is no foundation in fact for the accusations contained in the quoted portion of the will, and hence this will on its face shows that disinheritance of contestants was dictated by insane delusions. They point out, that of the 16 disinherited contestants, 12 were not parties to any

of the litigation in which testator had been involved and to which he evidently refers in the will. But the record discloses that as to all the contestants, either they or their parents, who subsequently died, at one time or another were antagonistic to the deceased in litigation involving either his property rights or his personal liberty. As the result of a proceeding started in the probate court of Wayne county in July, 1919, James Lacroix was adjudicated mentally incompetent and placed under guardianship. He was not released from guardianship until December, 1925. During this period, incident to the settlement of litigation instituted against him by his relatives, he was deprived of a large amount of property. Later he petitioned to have the judgment and decrees entered against him set aside. In this he was unsuccessful. See *In re Lacroix's Estate,* 244 Mich. 148, from which may be ascertained something of the nature and extent of litigation between James Lacroix and various relatives. The litigation was settled while James Lacroix was under guardianship. This settlement, by which large property interests were taken from him and turned over to the plaintiffs, was based upon the contention that over a period of years James Lacroix had indulged in dishonest conduct in the management and disposition of the property of a crippled sister who had subsequently died, and that by so doing he had fraudulently appropriated much of her property. There is no doubt that James Lacroix believed that both by this settlement and by his having been placed under guardianship he had been grossly wronged and that his relatives had unjustly profited at his expense. In that particular his mental attitude was not unlike that of many, perhaps most, defeated litigants. It is not at all strange

that after being relieved from a guardianship, under which he asserted he was never legally placed, he insisted that he was entitled to a review of adverse adjudications or settlements made during the period of disability thus (as he asserted) unlawfully imposed. Nor is it strange or an indication of an insane delusion that Mr. Lacroix as a layman believed that a great injustice was done him by denial of such review, or that he might still (at the time of making his will) have hope of securing a review and readjudication in some court and that to such end he provided in his will the trustee was ''authorized'' to bring suit for restoring to testator's estate the property of which, as he viewed it, he had been unjustly deprived. His belief and course of conduct in this regard were not without foundation in fact and were not indicative of an insane delusion.

Undue Influence.—On this phase of the case appellants stress the claim that the testator was of ''low average mentality,'' and ''obsessed'' with the belief that his relatives had persecuted him and wrongfully deprived him of his property. Nonetheless, if as we hold, there was no evidence of mental incompetency at the time of making the will, the ruling of the trial judge sustaining it must stand unless there is some credible showing of undue influence. There is no claim, nor could there be, of undue influence on the part of any one interested in this estate except the trustee named in the will. The testimony disclosing the circumstances surrounding the making of this will may be thus summarized. In 1925 James Lacroix prepared in his own handwriting a draft for his will. This draft was produced in court on this trial. With the exception of one or two minor changes it was typewritten and executed exactly as testator prepared it. At that time he stated he was interested in the

welfare and happiness of blind people, a majority of whom were poor and in need of help in various ways. After making some preliminary provisions much like those in the will here in suit, he left the residue of his estate ''to Detroit institutions for the blind, for the purpose especially to buy books for them.'' He appointed his attorney, William Look, and another as ''executives'' with full power to dispose of testator's estate in such manner as would ''fully effectuate the provisions'' of the will. In 1930 James Lacroix contemplated a trip to ''Cuba and the south;'' and he took up with his attorney the matter of drafting another will. He stated to his attorney that he had learned there was no ''Detroit institution for the blind.'' There was consultation with his attorney including consideration as to the advisability of including in this latter will the above-quoted portion of paragraph four. He was told by his attorney ''it would be a good idea over his signature and not leave it open to guessing.'' Testator thereupon prepared in pencil a draft of the will as he wished it. Later he took it to his attorney's office. This draft was ''substantially like the present will'' which was typewritten in the attorney's office, read over by the testator, compared by him with his own pencil draft and then duly executed. Further recital of details would not lead to a better understanding of this case. The record appears to us to be barren of credible testimony tending to establish undue influence.

A testator's failure to leave his estate to near relatives with whom he is not on good terms does not create a presumption of undue influence on the part of those who are beneficiaries under the will. *Pritchard* v. *Hutton,* 187 Mich. 346. Nor does the fact that a beneficiary under a will has for a long time been intimate with and has attended to business

transactions for the testator, who at times was afflicted with insanity, raise a presumption of undue influence. *Lamb* v. *Lippincott*, 115 Mich. 611. We have often said that proof of opportunity to exercise undue influence is not alone sufficient. *In re Murray's Estate*, 219 Mich. 70.

Both on the question of insane delusions and that of undue influence the record is such that had a jury on either of these grounds disallowed the will the court would have been compelled to set aside the verdict as being without support in the testimony. This being true the ruling of the trial judge sustaining the sufficiency of the will as a matter of law was correct.

Judgment entered in the circuit court is affirmed, with costs to appellees.

McDONALD, C. J., and POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred. WEADOCK, J., did not sit.