*In re* EVANS' ESTATE.

LEVENSELLER *v.* SMITH.

1. WILLS—EXECUTION—EVIDENCE—QUESTION OF LAW.
    In will contest, evidence *held,* sufficient to justify holding of trial court as a matter of law that will was executed in accordance with legal requirements.

2. SAME—UNDUE INFLUENCE—PRESUMPTIONS—PRACTICAL NURSE—
CONFIDENTIAL RELATION—POWER OF ATTORNEY.

Contention by cousins, residing in another State some distance
from home of testatrix, that will, containing bequest of house-
hold furniture, car and one-third of. the residuary estate to
neighbor who had acted as practical nurse for testatrix and her
late husband, is presumed to have been obtained through undue
influence of such legatee who is alleged to have sustained a
confidential relation with testatrix because he had a power of
attorney *held*, untenable where power of attorney was not given
to legatee until three months after will was executed.

3. SAME—UNDUE INFLUENCE—PRESUMPTIONS—INTERMITTENT INSAN-
ITY—INTIMATES—BUSINESS AGENTS.

Fact that a beneficiary under a will has for a considerable time
been intimate with and attended to business transactions for a
testator, notwithstanding latter was mentally afflicted to the
extent of being intermittently insane, does not raise a pre-
sumption of undue influence.

4. SAME—INSTRUCTIONS—UNDUE INFLUENCE—OPPORTUNITY.

Record in will contest *held*, not to disclose error, either in lengthy
and perhaps somewhat repetitious and irrelevant charge or
failure to give appellants' proffered requests as to undue in-
fluence so prejudicial as to constitute reversible error, espe-
cially where testimony indicates no more than that person who
is alleged to have exercised undue influence had an opportunity
to do so.

5. SAME—UNDUE INFLUENCE—OPPORTUNITY—PRESUMPTIONS.

Fact that opportunity was present for undue influence of a tes-
tator in making a will will not raise an inference of it.

6. SAME—UNDUE INFLUENCE—FAILURE OF BENEFICIARY TO BE SWORN
AS WITNESS—PRESUMPTIONS.

In contest of a will, alleged to have been the result of undue in-
fluence upon the part of a beneficiary, fact that such person
was not called as a witness by proponent at trial in circuit
court *held*, no basis for instruction to jury that presumption
was raised that had he been called his testimony would have
been adverse to proponent where such person was sworn as a
witness by contestants in the probate court and was present in
court throughout the trial in the circuit court notwithstanding
argument as to permissible inference from failure to testify
was made to the jury over proponent's objection.

7. Same—Mental Competency—Requests to Charge—Instruc-
    tions.

> Determination of jury in will contest that testatrix was not
> shown mentally incompetent to execute will when it was ex-
> ecuted *held*, proper where voluminous testimony was conflicting,
> full and detailed requests to charge were submitted by both
> proponents and contestants and charge as given on such ques-
> tion, though somewhat repetitious and prolix was not prej-
> udicial.

8. Evidence—Hypothetical Questions—Assumed Facts—Mental
    Competency.

> Objection to hypothetical question of considerable length relative
> to opinion of expert as to whether or not testatrix was suffer-
> ing from senile dementia to such an extent as destroyed her
> testamentary capacity at time will was executed *held*, properly
> sustained where in certain material particulars the facts as-
> sumed in the hypothetical question were not supported by testi-
> mony.

9. Wills—Instructions—Insane Delusions—Evidence.

> Charge to jury in will contest that only insane delusion with
> which testatrix is shown to have been afflicted had nothing to
> do with the disposition made of her property in the will and
> therefore jury could not find the will invalid on that ground
> *held*, justified under record presented.

10. Appeal and Error—Wills—Weight of Evidence—Record.

> Contention that verdict of jury sustaining will proposed for pro-
> bate was contrary to the weight of the evidence *held*, not sus-
> tained by record.

Appeal from Macomb; Reid (Neil E.), J.   Sub-
mitted January 19, 1938.   (Docket No. 138, Calendar
No. 39,679.)   Decided February 24, 1938.

In the matter of the estate of Annie S. Evans, de-
ceased.   A will was presented for probate.   Louise
Smith Trask and Fannie S. Northup ·objected
thereto.   Will admitted to probate.   Contestants ap-
pealed to circuit court.   Charles F. Smith joined as
contestant in circuit court.   Verdict and judgment
sustaining will.   Contestants appeal.   Affirmed.

*George W.* and *Clifford A. John,* for proponent.

*Lungerhausen, Weeks, Lungerhausen & French* and *Neale & Hirt,* for contestants.

NORTH, J.   This appeal involves a contest of the will of Mrs. Annie S. Evans, deceased.   She died October 2, 1935, at the age of 77 years.   The immediate cause of death was pneumonia, but she was then suffering from senile dementia.   Her husband's death occurred on December 18, 1934.   The will in suit bears date January 29, 1935; and it was proposed for probate by Aubrey Levenseller, one of the beneficiaries.   It was sustained after contest in the probate court and upon appeal to the circuit court with trial by jury it was again upheld.   It is contested on the grounds that it was not legally executed and that the testatrix was unduly influenced and mentally incompetent.   Contestants have appealed from the judgment in the circuit court sustaining the will and from the denial of their motion for a new trial.

Mr. and Mrs. Evans had been married about 20 years at the time of his death.   He left his property to Mrs. Evans who at the time of her death was possessed of a substantial estate.   Mr. and Mrs. Evans had no children, and so far as is disclosed by the record she left no near relatives surviving her. Contestants are first cousins living in the State of New York.   But the record discloses that this relationship had resulted in no particular friendliness or intimacy between testatrix and these cousins.   It is not shown when, if ever, they had visited each other.   They did not visit at the Evans' home during the final and somewhat prolonged illness of either Mr. Evans or Mrs. Evans nor were they pres-

ent at the funeral of either. They did not even appear and testify as witnesses at the trial of this case.

As noted above, the will was made by Mrs. Evans six weeks after the death of her husband. While the provisions of the will are somewhat numerous, each is of very simple character. It contains 11 separate bequests of sums of money ranging in amounts from $100 to $500 each. Two of these are to churches and the remaining nine are to designated individuals each of whom is referred to as "my friend." By another bequest the testatrix gave all of her household furniture and her automobile to Conrad Turrell who is also one of the three residuary legatees named in the will. The other two residuary legatees are designated in the will as "my second cousin, Frank Levenseller" and "my second cousin, Auburn Levenseller." Their relationship was in fact somewhat more distant than second cousins. Aubrey Levenseller at Mrs. Evans' request had visited her home for some considerable time prior to the death of her husband, and remained two weeks or more after the death of Mr. Evans. During his visit he assisted in the care of Mr. Evans and in other ways aided Mrs. Evans and afforded her companionship. Mr. Turrell, like Mr. and Mrs. Evans, was a resident of the village of Romeo. They lived about two blocks from each other. For several years he had served as village clerk. He was a practical nurse and had assisted in the Evans' home during the last illness of Mr. Evans. Subsequent to the latter's death Mr. Turrell kept in almost daily contact with Mrs. Evans and continued to render active friendly service without compensation. Mr. Homer L. Fitch, an attorney of upwards of 25 years' practice and then serving as president of the village of Romeo, had at the request of Mrs. Evans been appointed as

the administrator with the will annexed of Mr. Evans' estate, and he had served both Mr. and Mrs. Evans in a professional capacity. Just prior to the drafting of the will in suit Mr. Turrell at the request of Mrs. Evans informed attorney Fitch that she desired him to prepare her will. Mr. Fitch asked that Mrs. Evans make a written statement of the manner in which she wished to dispose of her property. Such a statement was prepared by Mrs. Evans in her own handwriting and through Mr. Turrell it was delivered in a sealed envelope to attorney Fitch. From this memorandum, together with some information supplied by Mr. Turrell, the attorney prepared the will, and by arrangements made through Mr. Turrell met with the witnesses to the will at the home of Mrs. Evans. They assembled in the latter part of the afternoon of January 29, 1935. At the time Mrs. Evans was in bed, although the testimony shows that her being in bed was not due to illness, but to her habit of retiring for rest on one or more occasions practically every day. Testimony offered by contestants disclosed that later in this same day Mrs. Evans without assistance came down from her bedroom on the second floor of the residence to the living quarters on the lower floor. The will was signed by the testatrix and the two witnesses whose presence she had requested through Mr. Turrell. One of these witnesses was the pastor of Mrs. Evans' church whom she had previously informed of her intention to make a will and asked him to act as a witness thereto. The other witness was her attending physician. Attorney Fitch testified that just prior to the execution of the will and in the absence of any other persons he read it to Mrs. Evans and gave it to her for her personal inspection, and that she expressed her approval of its provisions. How-

ever, there is considerable discrepancy in the record as to the details surrounding the execution of the will, particularly as to who took the instrument to Mrs. Evans in her upstairs bedroom, the length of time consumed in executing the will, and as to just what was done as to the will having been read to Mrs. Evans or as to her being advised of its contents. But we are satisfied that the testimony was ample to justify the refusal of the trial court to submit to the jury the question as to the will having been executed in accordance with legal requirements, and in holding as a matter of law that it was so executed.

Contestants rely very much upon their claim that prior to the execution of the will Mr. Turrell sustained a confidential relation to Mrs. Evans; and from this they urge that a presumption arises that the will wherein Mr. Turrell was a beneficiary was procured by undue influence. They assign error upon the trial court's refusal so to hold and charge. In support of their contention that there was a confidential relation, appellants stress the fact that Mrs. Evans gave Mr. Turrell a power of attorney (not printed in the record) in consequence of which he seemingly was authorized to transact her general business affairs. This contention is not tenable because no such relationship existed either at or prior to the time the will was made. Instead, the power of attorney was not given to Mr. Turrell until three months after the will was executed. We find nothing in the testimony which indicates that the relationship between Mrs. Evans and Mr. Turrell at or prior to the time of the will was other than hereinbefore indicated. He was a kindly, well-disposed neighbor who had rendered, without compensation so far as the record discloses, to both Mr. and Mrs. Evans, services in consequence of which the latter

might very naturally and justly have remembered him in her will. Especially is this true since Mrs. Evans was not survived by any near relatives who in consequence of relationship had any particular claim upon her bounty. We have repeatedly held that the fact that a beneficiary under a will has for a considerable time been intimate with and attended to business transactions for a testator, notwithstanding the latter was mentally afflicted to the extent of being intermittently insane, does not raise a presumption of undue influence. *In re Lacroix's Estate,* 265 Mich. 59; *Lamb* v. *Lippincott,* 115 Mich. 611; *In re Flood's Estate,* 270 Mich. 655; *In re Browne's Estate,* 217 Mich. 621; *Severance* v. *Severance,* 90 Mich. 417.

Very many of the other alleged errors stressed by appellants pertain to the court's charge to the jury, it being urged that there was error in numerous portions of the charge as given and also that there was error in the court's refusal to give requests preferred by appellants. Their complaint that the charge was unduly lengthy, that there was much repetition, and that certain portions of the charge related to questions not involved, or at best only remotely involved in this case, is not wholly without merit. However, a careful review of this record fails to disclose any error in the charge which would justify a holding that it was prejudicial to the extent of constituting reversible error.

Many of appellants' complaints as to the charge of the court or the refusal of the court to charge relate to undue influence. None of these could have been seriously prejudicial to appellants for the following reason: At the conclusion of all the proof the proponent made a motion for a directed verdict both as to the issue of undue influence and of mental incapacity. In the motion proponent urged upon the

court that there was no testimony tending to sustain contestants' claim of undue influence. The motion appears at length in the record. We quote but briefly:

"The fact that opportunity was present for undue influence will not raise an inference of it. *In re Allen's Estate*, 230 Mich. 584. See, also, *In re Spinner's Estate*, 248 Mich. 263; *In re Carlson's Estate*, 218 Mich. 262; *In re Bulthuis' Estate*, 232 Mich. 129."

Our review of this record satisfies us that at most the testimony indicates no more than that Mr. Turrell may have had an opportunity to exercise undue influence in the making of the will. He is the only person appellants claim exercised undue influence in procuring this will. While he was in Mrs. Evans' home at the time she signed her will, he was not in her presence when she executed it. Whatever he did relative to securing the presence of her attorney and the witnesses for Mrs. Evans, was seemingly done at her request, although direct testimony as to all details was not produced. As we have repeatedly held in the cases above cited, proof of mere opportunity is not sufficient. Because of this condition of the record the trial court on proponent's motion might well have entirely withdrawn from the consideration of the jury the contestants' claim of undue influence. Under the circumstances appellants should not secure a reversal on the ground that the court declined to give certain of their requests pertaining to undue influence nor on the ground that there was error in the charge as given on this phase of the case. In any event we think nothing appears in the court's charge relating to undue influence which constitutes prejudicial error.

We are not impressed with appellants' contention that because Mr. Turrell (who was present through-

out the trial of this case) was not called as a witness by proponent, therefore a presumption arises that had his testimony been given it would have been adverse to the proponent of the will. This is not a case wherein an interested litigant has suppressed testimony or by absenting himself from the court proceedings has deprived his adversary of the opportunity to place him upon the witness stand. In the contest of this will in the probate court Mr. Turrell was sworn as a witness by contestants. On this account it is obvious that they were fully advised of what would have been the character of Mr. Turrell's testimony if called as a witness in the circuit court. They not only had the advantage of knowing what his testimony was in the probate court, but also the opportunity of calling him as a witness at any time they saw fit during the trial in the circuit court. The burden of proof was on the contestants. They were permitted to argue to the jury the inference that might be drawn from Mr. Turrell's failure to testify. Over proponent's objection, the court, in the presence of the jury, so ruled. There is no justification for appellants' complaint that because proponent saw fit to submit the case without calling Mr. Turrell as a witness, contestants were entitled to have the court charge the jurors they should presume that Mr. Turrell's testimony, had it been given, would have been adverse to proponent.

In this case the actual question worthy of being litigated was whether testatrix at the time of making her will (January 29, 1935) had sufficient mentality to make this will. In the charge to the jury the circuit judge stated that the trial had been in progress "for several days." A rather large volume of testimony was taken in behalf of the respective litigants. If that produced in behalf of proponent were ac-

cepted as true, unquestionably the will was valid. If on the other hand the testimony for contestants were accepted as true then the will was clearly invalid because of mental incapacity. A broad range of testimony was admitted bearing upon the age of testatrix, the state of her health, whether she was weak or strong, ill-tempered, eccentric, forgetful, suffering from delusions, or afflicted with senile dementia, et cetera. There is testimony of one witness that about an hour after the will was executed Mrs. Evans said she did not know she had signed a will. All these and other phases of the record were before the jury on the issue of Mrs. Evans' mental competency at the time the will was made. Counsel for contestants submitted rather full and detailed requests to charge. Such requests to the extent of covering approximately two and a half pages of the printed record were given verbatim, and we think fully and clearly covered, from the standpoint of contestants, the law applicable to this phase of the case. In an obvious effort to cover thoroughly the question of alleged mental incompetency, the circuit judge also gave verbatim numerous requests submitted by proponent's counsel. As a natural consequence there was some repetition and prolixity. But we do not find prejudicial error resulting from erroneous statements of the law or, as appellants contend, because certain designated portions of the charge were ''confusing, argumentative and repetitious.'' The determination of the jury under the charge of the court that Mrs. Evans was not shown to have been mentally incompetent at the time of making her will must be accepted.

Another error relied upon by appellants is the ruling of the trial court sustaining proponent's objection to the hypothetical question propounded by

them to Dr. Howard M. Freeman. An important issue in this case was whether Mrs. Evans at the time of making her will was suffering from senile dementia to such an extent as destroyed her testamentary capacity. Proponent concedes that during the summer of 1935 she became so afflicted. Contestants assert that she was in that condition prior to the date of making her will, January 29, 1935. The lengthy hypothetical question propounded, covering more than two pages of the printed record, was submitted for the purpose of obtaining Dr. Freeman's opinion as to whether Mrs. Evans was suffering from progressive senile dementia in November, 1934. The court sustained proponent's objection to the question on the ground that the assumed facts were not in accord with the record; but at the same time the court suggested to counsel that they "had better redraft" the question. It was not redrafted. The ruling of the court was correct because in certain material particulars the facts assumed in the hypothetical question were not supported by testimony. We note only the following: There is no testimony supporting the assumed fact that "in November of 1934, and on at least three different occasions in that month" Mr. Evans fell out of his bed and was allowed "to remain on the floor all night, and (Mrs. Evans) said, 'Let him lay there,' and objected to have a friend telephone for assistance to get her husband back in bed." At most the testimony shows that there was only one occasion when Mrs. Evans allowed her husband to remain on the floor all night, after he had fallen out of bed and those present in the household were not able to lift him back into bed; and on this occasion he was provided with a pillow and cover. Further there was only one occasion (not three) when Mrs. Evans sug-

gested that Mr. Evans be left upon the floor after having fallen from his bed. Another assumed fact embodied in the question and one which was of serious importance was that Mrs. Evans' "mental powers constantly decreased from March, 1934, down to the time of her death." There is no competent testimony in the record justifying this wrongfully assumed condition as being a fact.

Appellants complain because the circuit judge in his charge to the jury explained the law relative to insane delusions, and stated to the jury that the only insane delusion with which the testimony tended to show Mrs. Evans was afflicted, had nothing to do with the disposition of her property made by her will; and therefore the jury could not find the will invalid on the ground of an insane delusion. Appellants now say in their brief:

"We submit that there was no evidence in the cause nor attempt on the part of contestants to claim that the insane delusions of Mrs. Evans relative to her parents (entered) into the making of the will."

This portion of the charge was not subject to the criticism that it was "argumentative." And contestants cannot now complain that it was confusing in that it did not relate to an issue in the case. One of the grounds of appeal from the probate court is contestants' claim that the will was invalid because of testatrix's insane delusions; and contestants offered testimony tending to show that Mrs. Evans at times believed her parents, who had been dead for years, were in an upstairs room in her home. It developed that this delusion had no bearing whatever upon the testamentary disposition which Mrs. Evans made of her property. The trial court was fully justified in directing the jury's attention to

this condition of the record and instructing them as above noted.

Appellants' contention that the verdict of the jury is contrary to the weight of the evidence is not sustained by this record. We find no merit in other alleged errors. The judgment entered in the circuit court is affirmed, with costs to appellee. The case is remanded for certification of the judgment to the probate court.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.